## N. V. SCARBOROUGH V. R. ARRANT.

Where the vendor of land executes his bond to make title on the payment of the note given by the purchaser for the purchase money, in respect to the security taken by each being a consideration, the one for the other; they are mutually dependent one upon the other. But in respect to performance, or payment, or times of either, they may be dependent, conditional, or independent, one to the other, according to the intention of the parties, as manifested in the terms of the instruments evidencing the trade.

There may be a dependence of reciprocal obligations arising out of the intention of the parties in such a contract, though not expressed in the terms of the instruments, emanating from the doctrine of the entirety of the contract of sale.

Most generally a contract for the sale of land, though evidenced by several instruments as a bond for title on one side, and notes of hand on the other, is understood to be intended as an entire contract. When so treated, it becomes analogous to a memorandum, or article of agreement for the sale of land, which is usually signed by both parties, each party taking a duplicate original—the usual mode of contracting for the sale of land in England.

At law, a party to such contract cannot recover without showing strict performance on his part at the time and in the manner stipulated. Courts of equity " dispense with that which would make compliance with what the law requires oppressive ; and in various cases of such contracts, they are in the constant habit of relieving the man who has acted fairly, though negligently." This relates to the time of performance, as well as to other things, when time is not of the essence of the contract, expressed or implied.

The failure of one, however, does not, even at law, put an end to the contract so as to make it void. It gives the other party the right to rescind it, or to waive the default, and continue it in force. When this right, either of rescission or of continuation of the contract, has been exercised, then the rights of the parties are re-settled upon a new basis, into which such act enters as an element.

The rule in equity, as laid down by the Supreme Court of the United States, as applicable to a party seeking a specific performance of such a contract, but who has been guilty of laches in a case even where time is not of the essence of the contract, is quoted in the opinion.

Where a party who has executed a bond to make title on the payment of the purchase money at a specified time, has received a part of the purchase money, and gives indulgence after default, and thereby waives it, may, nevertheless, put an end to the waiver, and make time material by demand

of payment and notice of intended rescission; and ordinarily some such affirmative act would be necessary to enable the party to take advantage of the default.

Where, on such a contract, a part of the purchase money was paid, and the note of the obligee for the balance, bearing interest at ten per cent. from its maturity, was wholly unpaid, time not being originally of the essence of the contract, nor made so by any demand of the money, and notice of intended rescission after default of payment; in a suit by the obligee for a specific performance of the contract it was held that, nothing appearing in the petition to show that the obligor cannot be fully compensated for the delay by the ten per cent. interest, or that it would be otherwise inequitable or unjust to require a specific performance upon the payment of the note, it was error to sustain a demurrer to the petition.

A subsequent purchaser from the obligor, with notice of the rights of the obligee of the bond, can oppose no valid objection to the specific performance.

ERROR from Tyler. Tried below before the Hon. James M. Maxcy.

This suit was brought by N. V. Scarborough against Reddrick Arrant and John H. McKinney to compel the specific performance by Arrant of the conditions of a bond, and to cancel a certain conveyance from the latter to McKinney. The defendants answered jointly by a general demurrer and other answers. The demurrer was sustained, and judgment rendered thereon for the defendants.

The other facts appear from the opinion.

*Pedigo & Minter*, for the plaintiff in error.

*S. A. Wilson*, for the defendants in error.

ROBERTS, J.—This is a suit for a specific performance of a contract for the sale of land as evidenced by a bond for title, which acknowledged that a part of the purchase money was paid down, on one side, and by a promissory note for the balance bearing ten per cent. interest from date until paid, on the other side. The facts set forth in the petition, and not those in the answer, are before us for consideration, as a demurrer to the petition was sustained. The question is, has the negligence of the appellant defeated his right to this remedy?

Scarborough purchased of Arrant a certain tract of three hundred and twenty acres of land situated in Tyler county, on the 1st day of January, 1853, at the price of three hundred and twenty dollars. He then paid him one hundred and twenty dollars in money, and executed his note, payable the 1st of January, 1854, for two hundred dollars. Arrant not then having a title to the land, executed to Scarborough a penal bond in the sum of six hundred and forty dollars, with the following stipulation and condition, after reciting the sale and its terms, to-wit: "Now, when the said Scarborough shall pay off and discharge said promissory note, then I bind myself, my heirs, administrators, and assigns to make, or cause to be made, unto the said Scarborough a title to said land, according to the patent issued to me by the State of Texas, so soon as I can obtain a patent from the State."

This note and bond constitute the written contract of sale, and show the obligations each party incurred by entering into it. Before proceeding further to develop the facts of this case, it may be proper to consider what was the nature of the contract into which the parties considered themselves as entering when these instruments were executed. Scarborough regarded himself as purchasing a tract of land, and took such assurance of the title as Arrant was then able to give him, a bond for title. The patent had not then issued, and Arrant had only an equitable title to the land. The bond acknowledged the sale and the partial payment of the price, and bound Arrant to make to Scarborough a title. When and upon what conditions? When Scarborough should pay off and discharge the note, and so soon as he could obtain a patent from the State. It is not made to depend expressly upon the punctual payment of the note at maturity. The note is made to bear interest from its date until paid. This shows that it was anticipated that the note might not be paid until after maturity, and still the contract of sale be in force, so that the note should bear interest. The penalty of the bond secured Scarborough a certain amount, damages for the non-performance by Arrant. Such a bond is regarded and treated in this State as a species of title to land. It is authorized to be recorded, and its registration "shall be taken and held as notice to all subsequent purchasers of

the existence of such bond or contract." (O. & W. Dig., Art. 1727.) An action of trespass to try title may be maintained under it. (Miller v. Alexander, 8 Tex. R., 36.) It is an equitable title to the land, subject to the conditions expressed in the bond, or implied from the nature of the contract.

On the other hand, Arrant regarded himself as contracting for money, part of which was paid down and the balance secured by taking a promissory note payable with interest at a particular time. That time was not made dependent upon when the title should be made, or when the patent should issue, or any other event connected with the trade. This note is secured by a lien upon the land sold. It may be put in market and carry with it the lien, or it may be retained after maturity to draw interest, as a secure investment.

Thus the one has purchased land, and the other contracted for money, and each has taken instruments to secure him in the ultimate attainment of his object. Each party relies upon the security taken and its legal and equitable incidents. One is the consideration for the other. In respect to their being respectively a consideration, one for the other, they are mutually dependent one upon the other. But in respect to performance, or payment, or times of either, they may be dependent, conditional, or independent, one to the other, according to the intention of the parties as manifested in the terms of the instruments evidencing the trade.

In considering this question, it is sometimes important to keep in mind this distinction between the inherent dependence of one part of the contract upon the other, arising out of their being respectively considerations one for the other, and their dependence arising out of the terms of the instruments or nature of the contract. In this case, however, the petition presents no facts that could raise a question upon a failure of consideration.

The terms of the contract, as embraced in the instruments in this case, exhibit obligations both dependent and independent. For instance, Scarborough's obligation to pay the two hundred dollars at the stipulated time, and interest at ten per cent. until the money is paid, is independent and unconditional. Arrant's obli-

gation to obtain a patent from the State is absolute, but as to time, it is dependent upon the fact as to when it is reasonably practicable for him to do so by using diligence.    His obligation to make a deed (after he shall have obtained the patent) is dependent upon the payment of the note by Scarborough.    The acts to be done by each party are not stipulated to be performed necessarily at the same time, and are in respect to each other independent obligations as to time of performance.    There may also be a dependence of reciprocal obligations, arising out of the intention of the parties in such a trade, though not expressed in the terms of the instruments, emanating from the doctrine of the entirety of the contract of sale.    A case might occur in which it was evident that the parties respectively relied upon the security taken by each for ultimate performance by the other.    That is, that the vendor would rely on the personal liability of the vendee upon his notes, and his lien upon the land for their ultimate payment; and the vendee would rely upon his bond to obtain his title by his remedy in equity, or his damages at law.    In such case the obligations of each would be independent, except so far as they might be dependent in respect to their being reciprocally considerations, one for the other.    The mere non-performance by one would be no excuse for non-performance by the other, when there was no failure of consideration.

Most generally, however, a contract for the sale of land, such as this, is understood to be intended as an entire contract, though evidenced by several instruments, such as bond for title on one side and notes of hand on the other.    When so treated, it becomes analogous to a memorandum or article of agreement for the sale of land, which is usually signed by both parties, each party taking a duplicate original.    (Ensign v. Kellogg, 4 Pick., 1.)    This is the usual mode of contracting for the sale of land in England; and upon this mode of contracting, the principles of equity as to their enforcement have grown up.    They have been based upon the entirety of the contract, although they may not follow exactly the rules of law in respect to the legal incidents of such entire contract.    Indeed some of them were devised to relieve against the consequences of the rigorous rules flowing from the common

law doctrine of the entirety of the contract. At law a party to such contract cannot recover without showing strict performance on his part, at the time and in the manner stipulated. Courts of equity "dispense with that which would make compliance with what the law requires oppressive, and in various cases of such contracts they are in the constant habit of relieving the man who has acted fairly, though negligently." (2 Story Eq., § 775, notes refer to and quote Davis v. Hone, 2 Schoales & Lefroy, 347, and Lennon v. Napper, ib., 684.) This relates to the time of performance as well as other things, when time is not of the essence of the contract, expressed or implied. (Taylor v. Longworth, et al., 14 Peters, 174.) This dependence of obligations arising out of the entirety of the contract, is mutual, and each party must perform what is required of him. (Benedict v. Lynch, 1 Johns. Ch., 373.) The failure of one, however, does not even at law, put an end to the contract so as to make it void. It gives the other party the right to rescind it, or to waive the default and continue it in force.

When this right either of rescission or of continuation of the contract has been exercised, then the rights of the parties are resettled upon a new basis, into which this act enters as an element. This brings us to a view of the questions involved in this case. What will constitute a waiver of the default, and when once made what is necessary to terminate it? After a part performance, what will be regarded as a valid rescission upon default; and after such rescission is complete, what are the rights of the parties as to the part that has been performed?

The additional facts, stated in the petition, which present these questions, are, that upon the execution of the bond and note, and part payment of the purchase money, Arrant promised to inform Scarborough, who resided in Louisiana, when the patent issued, which he failed to do. That on the 6th day of September, 1856, Arrant sold all his right, title and interest in the land, to McKinney, who had full notice of plaintiff's rights; that no possession has been taken of the land, and no improvements have been made thereon; that plaintiff has always been ready, willing and anxious to pay said note and interest, and learning that a patent had been

granted, he came to the residence of said Arrant and tendered him the full amount due, on the 20th day of October, 1857, and demanded a title in accordance with the bond, which he refused to give, and then informed plaintiff that he had sold the land to McKinney. That he is still ready and willing to pay said note and interest. McKinney is made a party, and a decree is prayed that he have a title, or recover the money paid with interest. The suit was instituted in April, 1858. This state of facts shows great delay on the part of Scarborough in completing the performance of the contract on his part. The rule as applicable to such cases is laid down by the Supreme Court of the United States as definitely as it is perhaps capable of being stated. They say : "In the first place there is no doubt that time may be of the essence of a contract for the sale of property. It may be made so by the express stipulations of the parties, or it may arise by implication from the very nature of the property, or the avowed objects of the seller or the purchaser. And even when time is not thus, either expressly or impliedly, of the essence of the contract, if the party seeking a specific performance has been guilty of gross laches, or has been inexcusably negligent in performing the contract on his part; or if there has, in the intermediate period, been a material change of circumstances, affecting the rights, interests or obligations of the parties; in all such cases courts of equity will refuse to decree any specific performance upon the plain ground that it would be inequitable and unjust. But except under circumstances of this sort, or of an analogous nature, time is not treated by courts of equity as of the essence of the contract, and relief will be decreed to the party who seeks it, if he has not been grossly negligent, and comes within a reasonable time, although he has not complied with the strict terms of the contract. But in all such cases the court expects the party to make out a case free from all doubt, and to account in a reasonable manner for his delay and apparent omission of his duty." (Taylor v. Longworth et al., 14 Peters, 174.) It does not appear in this case, either from the terms of the contract, or from the nature of the trade, that time was of the essence of the contract. In considering the excuse for the delay on the part of Scarborough, this case must

be regarded very differently from one in which there is a mere negotiation for a trade in land, evidenced by a memorandum or article of agreement, stipulating how and when the purchase is to be completed, and in which neither party has done anything but execute the agreement. For the character of the instruments evidencing the contract shows that they regarded the substantial right to the land as passed from Arrant to Scarborough. Arrant could have taken possession of it, and used or disposed of his interest in it. Scarborough was enjoying the use of more than one third of the price of it, which had been paid, and had taken a note securing the payment of the balance, with interest until it should be paid. The land remained liable to pay the note, Scarborough's non-residence did not prevent a suit subjecting it to the payment of the note; he had to obtain a patent to prepare himself for performing his part of the contract. It is quite probable that the main object of giving a twelve months credit on the unpaid balance was to give Arrant a reasonable time within which to obtain the patent, after which both parties might securely complete the trade. Arrant promised to inform Scarborough of the issuance of the patent, when he should obtain it; this promise, though no part of the contract, is important in accounting for the delay of Scarborough. No demand is shown to have been made for the balance of the money. Under all these circumstances, Scarborough was reasonably justified in the expectation that Arrant was content with the conventional interest stipulated for, and was not seeking to repudiate the contract, and keep the money already paid, without giving him notice in some way. Had Arrant demanded payment, and given notice that he would regard the contract as at an end if he persisted in his default, then he might have been justified in equity in selling the land to another. (Hatch v. Cobb, 4 Johns. Ch., 559.) A party who has received part of the purchase money, and gives indulgence after default, and thereby waives it, may nevertheless put an end to the waiver and make time material, by demand of payment and notice of intended rescission; and ordinarily some such affirmative act would be necessary to take advantage of the default. Such a course is not only dictated by an equitable spirit of fairness in dealing, but

it is in accordance with the usual course of trade in this country, in reference to which the parties may well be supposed to contract. Had Scarborough delayed until the note was barred by the statute of limitations, the presumption might not so readily have been indulged that he was not anticipating a repudiation of the contract by Arrant. But even in a case of that sort, the opinion of this court in the case of Estis v. Browning was very favorable to relief. (11 Tex. R., 248.) Time was not originally of the essence of the contract, nor was it made so by demand of the money, and notice of intended rescission after default; and there is nothing stated in the petition which shows that Arrant can not be fully compensated for the delay by the ten per cent. interest, or that it would be otherwise inequitable or unjust to require of him a specific performance of the contract, upon the principal and interest of the note being paid. (14 Peters, 174; 2 Story Eq. Jur., sec. 771, 2, 3, 4, 5, 6, and notes; Hill v. Still, 19 Tex. R., 76.)

McKinney having purchased Arrant's right, title and interest, to the land, with notice of Scarborough's right, is not in a situation to oppose any valid objection to the specific performance. (2 Story Eq., sec. 788.)

Before selling the land to another, Arrant, under the circumstances, should have done something to have made the time material, and thereby have put an end to any waiver implied from his indulgence of Scarborough on the note after default.

We are of opinion then that there has been no such valid rescission of the contract, as the facts are stated in the petition, as will defeat Scarborough's equitable remedy of specific performance. This will suffice for the present disposition of the case, as the other question involved does not necessarily arise, and may not hereafter be necessary to be decided, in this case.

The judgment is reversed and the cause remanded.