## G. W. Tom and Wife v. Louise Wollhoefer et al.

### (Case No. 1825.)

1. Vendor and vendee.— One who contracts to purchase from a vendee of land before such vendee has completed his own purchase by the payment of purchase money, does so with full knowledge of the original vendor's rights to rescind his contract of sale and recover the land, or to convey it to a third party. Such right of rescission must, however, be clearly and unequivocally exercised, in a proper manner, at a proper time, and under circumstances which entitle the vendor to declare the contract of sale rescinded.

2. Same.— No act on the part of a purchaser, except such as under the contract itself produces a forfeiture of the title, can invalidate that title to the prejudice of parties to whom he has given a deed or mortgage, affecting the subject matter of the original sale.

3. Same — Default — Mortgage — Equity.— A vendor of land held a purchase money note not due, the interest on which, payable annually, was due; he gave no notice of his desire to rescind the sale by reason of default in payment of interest, but canceled the debt unpaid and accepted a reconveyance, for which he had paid an additional consideration. Prior to this the original vendee had incumbered the property, of which his vendor had notice, and after receiving the reconveyance the original vendor again sold the land, postponing the receipt of a part of the purchase money equal to the amount for which the land had been incumbered by the first vendee, with a reservation of the rights of the beneficiary in the incumbrance, if he had any. In a proceeding in equity, begun by the original vendor, to which the second vendee was a nominal plaintiff, against the mortgagee, to remove cloud from title, and decree the land to the second vendee freed from the mortgage, it was shown that the money loaned by the mortgagee to the first purchaser was applied by him in making payments on the land and improvements before its reconveyance. *Held:*

　　(1) The land was subject to the satisfaction of the mortgage.

　　(2) Time, as to payment of interest by the first purchaser, was not of the essence of the contract, no expression to that effect being contained in the original deed; and if it had been, demand should have been made for the money and notice given of an intention to rescind the contract for its breach.

　　(3) The reconveyance to the first vendor did not, under the facts of the case, amount to a rescission which would defeat the lien of the mortgagee, an additional consideration having been paid for the reconveyance, and the second sale not being made until the vendor accepted a deed recognizing title with full knowledge of the incumbrance.

　　(4) The vendor's remedy by rescission is, when part of the consideration has been received, a harsh one, and slight circumstances will avail to protect the vendee against a forfeiture, or compel the vendor to seek redress by suit for the balance due.

　　(5) A long delay in seeking payment of purchase money will be construed into a waiver of the default.

　　(6) Any act, after cause for rescission, such as a transfer of a purchase money note, or a repurchase, with the payment of a sum in excess of the amount due, will be construed into a waiver of default and an affirmance of the original contract.

(7) If the vendor seeks a court of equity to set aside the sale, he must tender back the purchase money already paid or he will be defeated because not offering to do equity.

(8) The vendee when sued for the land may tender the unpaid purchase money, no matter how long since his default occurred, and save the forfeiture.

Appeal from Gonzales. Tried below before the Hon. Everett Lewis.

Appellants conveyed the land described in the pleadings to Ferd. Floege, and executed a deed, which retained a lien to secure deferred payments of purchase money. Floege mortgaged the land to Wollhoefer. Floege died, and, at the time of his death, he was insolvent, and owed a note given for the land to appellants for $6,400, due in 1885, interest payable annually, and one year's interest was due and unpaid. Appellants requested Wollhoefer to take the land and assume the payment of the note, which Wollhoefer declined to do.

Appellants, with full notice of the existence of Wollhoefer's mortgage, accepted a deed, reconveying the land from Mrs. Emma Floege, the widow and heir of Floege, deceased, and paid her therefor $250 in rent notes, and relinquished to her the notes of her husband for $6,400 and interest, which was the balance of the amount stipulated to be paid for the land.

Floege had obtained from Wollhoefer $2,500, for which sum the mortgage was given, and had paid $2,000 of this amount to appellants for the land, and had applied the remaining $500 in making permanent improvements on the land, of all of which appellants had notice at the time they received a reconveyance from Mrs. Floege.

Appellants then sold the land to Albrecht, who also had notice of the equities of Wollhoefer, and who paid all of the purchase money due by him to appellants except $2,500. For this amount Albrecht executed to appellants a note which stipulated that said amount was not to be collectible until the mortgage of Wollhoefer on the land, for which this note was given, was either settled by suit or by limitation. Appellants brought this suit against the appellees, who were the heirs of Wollhoefer, who was dead, and ask that the cloud be removed from Albrecht's title, and that the mortgage be declared of no effect, so far as the land was concerned. A jury was waived, and it was agreed that the pleadings stated the facts of the case in substance as above stated.

The result of the suit was that the heirs of Wollhoefer recov-

ered from appellants $2,500, to be paid out of the note of Albrecht to appellants, and that thereupon Albrecht be quieted in his title.

*W. E. Goodrich*, for appellants, cited: Baumgarten *v.* Smith, 37 Tex., 439; Thompson *v.* Westbrook, 56 Tex., 265; Cassaday *v.* Frankland, 55 Tex., 452; Baker *v.* Ramey, 27 Tex., 52; Hausbraugh *v.* Peck, 5 Wall. (U. S.), 497; Howard *v.* Davis, 6 Tex., 174; Dunlap *v.* Wright, 11 Tex., 597; Webster *v.* Mann, 52 Tex., 425; Caldwell *v.* Fraim, 32 Tex., 311; Secrest *v.* Jones, 21 Tex., 132.

*W. R. Neil*, for appellees, cited: Dibrell *v.* Smith, 49 Tex., 479; Primm *v.* Barton, 18 Tex., 213; Secrest *v.* Jones, 30 Tex., 603; Patrick *v.* Roach, 21 Tex., 251; Thomas *v.* Beaton, 25 Tex. Sup., 321; Harris *v.* Catlin, 37 Tex., 581.

Willie, Chief Justice.— A vendor, by executory contract for the sale of lands, when default is made in paying the purchase money, has ordinarily the right to rescind the contract and recover the land, or convey it to a third party. Estes *v.* Browning, 11 Tex., 247; Scarborough *v.* Arrant, 25 Tex., 129; Secrest *v.* Jones, 21 Tex., 121.

Parties dealing with the vendee before his part of the contract has been complied with, do so with full knowledge of the vendor's rights, and cannot ordinarily be heard to complain, if, by reason of a default on the part of the purchaser, their contracts with him are rendered of no avail.

To deprive them, however, of their rights in the subject matter of such contracts, the vendor must clearly and unequivocally exercise his right of rescission in a proper manner, at a proper time, and under circumstances which entitle him to declare the sale canceled, and his contract with the vendee forfeited.

Moreover, there must not exist at the date of the attempted rescission any such equities in favor of a subsequent vendee or mortgagee of the purchaser as will prevent a rescission, without a saving of his rights as against the property which is the subject matter of the original sale.

In the present case it does not clearly appear what was the exact contract between Tom and Floege as to the payment of a part of the purchase money, viz., the $2,000, for which a note appears to have been given. Neither the date of the maturity of this note, nor the fact as to whether or not it bore interest from date, is satisfactorily disclosed by the evidence.

That there was $6,400 in principal, together with some interest, owing at the time Tom received the deed from Mrs. Floege does appear, and that this interest, or a portion of it, fell due on the 1st of January, 1881. The principal would not mature till the latter part of the year 1885, some four or five years after the date of the above transaction between Mrs. Floege and the appellant Tom.

If Tom, the vendor, then had any right to rescind the sale, it was only on the ground that an instalment of interest, due on the 1st of January, 1881, had not been promptly paid. He certainly could not do so for the non-payment of the principal years in advance of the time it was due; for as to that the purchaser was not in default. He could not do so even with the consent of his vendee, to the prejudice of a mortgagee of such vendee, more especially when he had full knowledge of the mortgagee's incumbrance upon the land.

To countenance such a transaction would be to allow the vendor and vendee, by a combination between themselves, to defeat the rights of the mortgagee, when that could not be effected by a resort to the courts of the country to enforce the vendor's rights under the contract of sale.

The vendor certainly cannot rescind an act of court under circumstances which, upon a resort to the courts, would be insufficient to authorize a cancellation of the contract. No act on the part of the purchaser, except such as under the contract itself produces a forfeiture of his title, can vacate that title to the prejudice of parties to whom he has given a deed or mortgage affecting the subject matter of the original sale.

As to the supposed default in the payment of interest it appears that when the instalment fell due the original vendee had lately died. It does not appear that Tom claimed any forfeiture of the contract on account of this default, or notified the widow and heir of Floege that he should insist upon a rescission of the sale for non-payment of the interest. This he should have done if he proposed to cancel the contract otherwise than by a resort to proceedings in court.

Time as to the payment of the interest was not of the essence of the contract of sale by any expression in the deed, and if it was intended to make it such, demand should have been made for the money, and notice give of intended rescission in case of its non-payment. Scarborough v. Arrant and other authorities above cited.

So far from repudiating the sale, all the acts performed by Tom subsequent to the 1st of January, 1881, tend to show its affirmance on

his part. He proposed that Wollhoefer should assume the payment of the purchase money, and, upon his declining to do so, he arranged with Mrs. Floege to take back the land from her, giving in return for it the amount of purchase money still due, and $250 in addition.

This $250 consisted of notes for that amount given for rent of the land for the year 1881, for which rent Mrs. Floege would have been liable had the sale of the land been rescinded for non-payment of the interest on January 1, 1881. She therefore received as a consideration for her reconveyance to Floege an amount above that due upon the land, and the transaction did not amount to a mere cancellation of the sale, leaving the parties in the same condition as they would have been had the right to rescind been exercised through the courts or by a resale of the land by the vendor.

Besides treating with Mrs. Floege as owner of the property, instead of reserving control of it as if the title were in himself, Tom took a deed from her for the purpose of reinvesting himself with a title, and did not sell till he had received a transfer of her right in the land. All this was done with full knowledge of Wollhoefer's claims, and with the apparent design of defeating them.

The vendor's remedy by rescission is a harsh and stringent one, especially when a part of the consideration has been paid, and it is sought to forfeit the payment and recover or resell the land. Hence slight circumstances are seized upon to protect the vendee against the forfeiture of the amount paid, or compel the vendor to seek redress by a suit for the balance due upon the purchase money.

He must not delay too long in insisting upon payment of the money as it falls due, or he will be considered as having waived the default. See Scarborough v. Arrant, supra. He must not treat the contract as still subsisting, or do any act which may be construed into its affirmance. A transfer of one of the purchase money notes is held to amount to such an affirmance (Coddington v. Wells, 59 Tex., 49), and so doubtless is a repurchase of the land from the vendee, at least when more is paid than was due upon the original contract.

If the vendor goes into equity to set aside the sale he must tender the purchase money already received or he will be defeated as not offering to do equity. Coddington v. Wells, supra; Thomas v. Beaton, 25 Tex. Sup., 321. The vendee, when sued for the land, may tender the money due and this will save the forfeiture, no matter how long he may have been in default. Estes v. Browning, supra.

This case does not disclose a state of facts which entitles the ap-

pellants to a resale of the land with no saving of the rights of the mortgagee, Wollhoefer. Suit was not brought to rescind the contract of sale by reason of the default in payment of the interest accruing January 1, 1881. If so, a tender of that interest alone would have defeated the action and preserved the rights of Wollhoefer. He had no opportunity to have such tender made, but only to assume the payment of the entire balance due and to become due. The appellant did not demand the interest after default in its payment, nor give notice of his intention to rescind, but merely agreed to take back the land upon surrender of the debt, and paid an additional consideration for the reconveyance. All this with full knowledge of Wollhoefer's incumbrance upon the property. After receiving a deed from Mrs. Floege he sells to a third party, reserving the rights of Wollhoefer, if he had any, by postponing the receipt of a part of the purchase money equal in amount to his mortgage debts, till those debts could be disposed of by suit or limitation. He then comes into a court of equity and asks that he or his second vendee have the land free of the mortgages, and without return of the purchase money, which had been paid, it seems, with a portion of. the money raised on these mortgages, the balance being expended in improving the property.

Taking all these facts into consideration, we do not think that the appellants were in a position, at the time of the sale to Albrecht, to convey the land free of the incumbrance of Wollhoefer's mortgages; and we are of opinion that the court in adjusting the equities of all the parties did not err in rendering judgment, as shown by the record, and that judgment is affirmed.

AFFIRMED.

[Opinion delivered March 11, 1884.]