## W. A. & O. H. BELL v. JOHN C. MAXIMOS.

### No. 7469.

**Fact Case—Principal and Agent—Cotton Factor.**—A cotton buyer employed agents at a distance to buy cotton on the terms following: Each day the buyer was to furnish by telegraph to the agents a limit in price to be paid that day. The agents were to buy cotton, pay for it with their own money, send samples to their principal, when he was to classify it, and as fast as fifty bales of one grade were purchased he was to pay for same and furnish shipping orders. The agents were to receive 25 cents for each bale and the yard charges for their services. The agents bought 154 bales, notified their principal each day of the purchases, sent forward samples of the bales, and in each sample was enclosed a tag showing the number and weight of the bale. The bales were numbered consecutively as bought. The principal did not open the samples, but at once and repeatedly wrote for invoice and description, stating "that he could not classify without this." The agents paid no attention to these requests, but finally wrote to the principal to come and receive the cotton or they would sell it. The principal not complying with their request, they sold the cotton. The principal was solvent. In suit by him for the value of the cotton sold, *held*, that upon the purchase under the contract the cotton became the property of the plaintiff, and that the defendants were liable for the excess of sale price over cost and agreed compensation.

APPEAL from Collin. Tried below before Hon. H. O. HEAD.

*Craig, Wolfe & Clifton*, for appellants.

*M. H. Garnett* and *Muse & Mangum*, for appellee.

MARR, JUDGE, *Section A.*—The nature of this suit, in so far as any question is involved upon this appeal, may be stated as follows:

The appellee, John C. Maximos, brought the action to recover damages

of the appellants for "a breach of the contract in the wrongful conversion of 154 bales of cotton" which had been bought by them, under the contract between the parties, for the appellee, in the town of Farmersville, Texas. The last purchase was made by them, on account of the appellee, upon November 17, 1887, and they sold the cotton and converted the proceeds, without the consent of the appellee, on the 24th day of said month

The cause was tried before the court without a jury, and judgment was rendered for the plaintiff for the sum of $221.25, which was the difference, with interest, between the price received by the appellants for the 154 bales when they sold the cotton, and the price at which they had purchased the same, less the amount of their compensation or commission which was allowed to them.

There is no statement of facts in the record, but the district judge filed his conclusions of fact and law. The defendants have appealed, and the effect of all of their assignments is, that the findings of fact do not sustain the judgment as rendered in the court below. It is claimed that they committed no breach of the contract, but that the appellee did, and repudiated the same, and that therefore, under the circumstances, they were at liberty to sell the cotton as they did do.

The court found that the price at which the appellants sold the cotton was its "reasonable value at that time and place." Plaintiff's place of business was at Sherman, Texas, and the defendants' at Farmersville.

"With reference to the 154 bales, the following is the contract between appellants and appellee, as found by the court:

"Plaintiff employed defendants to buy cotton for him at Farmersville, on the following terms, to-wit: Plaintiff was each day by telegraph or letter to furnish defendants a limit in price to be paid on that day, and defendants were to buy the cotton, pay for it with their own money, send samples to plaintiff at Sherman, where he was to classify it, and as fast as fifty bales of one grade was purchased he was to pay for same and furnish defendants shipping orders therefor. Plaintiff was to pay defendants for their services 25 cents per bale and the yard charges, amounting to 15 cents per bale."

"Appellants purchased for appellee under the above contract the following cotton, to-wit: On November 14, 19 bales at $8\frac{13}{16}$ cents; November 15, 58 bales at $8\frac{11}{16}$ cents; November 16, 40 bales at $8\frac{5}{8}$ cents; November 17, 37 bales at $8\frac{11}{16}$ cents; making in all 154 bales. Appellee never at any time refused to receive said 154 bales. Appellants, on the 24th day of November, sold the 154 bales.

"Appellee was notified each day by the appellants of the cotton purchased, and that the same was numbered consecutively.

"That the appellants sent samples of the 154 bales to appellee at Sherman. In each sample was enclosed a tag showing number and weight of

bale; but appellants sent no letter of notification or description other than-
the tag enclosed in the sample. Appellee did not open the samples, but
at once and repeatedly wrote for invoice and description, stating that he
could not classify the cotton without this, and appellants did not respond
to this request, either by complying or refusing, but about November 21
notified plaintiff, by letter or telepnone, to come to Farmersville and re-
ceive the cotton or they would sell it, and on plaintiff's failing to comply
they, on the 24th of November, did sell the whole lot of cotton at 9¾ cents
per pound. Plaintiff was constantly demanding invoice of same, to en-
able him to classify and receive it.''

In the additional findings which were filed at the instance of the de-
fendants, the court also finds that '' the furnishing of invoices was not
specially mentioned one way or the other, in making the contract.
Plaintiff was to classify the cotton so as to fix the price he was to pay for
each bale, and the term ' basis middling ' in the contract meant the price
plaintiff was to pay for the cotton of that grade; for higher grades more-
and for lower grades less. The information furnished by the tags was all
·that was absolutely necessary to enable the plaintiff to classify the cotton,
but he was entitled to fuller information, especially when requested by
him. At least a failure to classify until such information was furnished.
would not be a repudiation of the contract until the defendants should·
give notice that it would not be furnished, which was never done.
Plaintiff could have received the cotton in the time limited by the de-
fendants for him to do so, as before explained; but they did not notify
him that they would not send the invoice, and I find that the defendants
had no right to require plaintiff to come to Farmersville to receive the
cotton. The contract required it to be classified at Sherman.  *  *  *
The cotton market was changeable, with a downward tendency, until·
about the time the defendants sold the cotton.''

The court further found that the evidence was not sufficient to enable
it to find what had been or was the prevailing custom in reference to the
matters involved. The contract between the parties seems to have been
parol, and as we interpret it, the defendants became the quasi factors of
the plaintiff, and were empowered by him to buy, but not to sell, cotton
for him. We also think that under the contract the cotton which had
been purchased by the defendants for the use and benefit of the plaintiff
became his property. We do not understand from the terms of the agree-
ment that it was optional with him to accept the cotton, or that he could
refuse to take and pay for it without violating the contract. The defend-·
ants advanced the money to purchase it on his account and at his request,
and made the purchases for him. He thereupon became liable to pay
them for the cotton, according to the limits and classifications to be made:
by him, as specified in the contract. They consequently were exposed
to no risk by the delay of the plaintiff in classifying the cotton, and as·

it is not disputed that the 154 bales in question were in fact of the requisite grades, the plaintiff could have been compelled to pay for them according to the basis fixed by the contract.

The cotton in question being his, the defendants could not sell it without his consent, unless he had repudiated the contract in some material respect, or unless the sale of the cotton was necessary under the circumstances for the protection of the interests of the defendants under the agreement. A factor may sell under certain circumstances for that purpose, when he does so in good faith, but even then he must account to his principal or employer for all the proceeds over and above his own advances, expenses, and commissions.

In this view of the law, we think that the judgment of the District Court is both just and correct. The defendants were allowed all of the advances which they had made for the plaintiff in purchasing the cotton, and also their compensation as fixed by the agreement. They were thus fully reimbursed and compensated according to the contract, and were only required to pay over the surplus of the proceeds of the sales to the plaintiff as the rightful owner. There is no pretense that the plaintiff was insolvent or unable to make good the advances, and with interest, had there been any unreasonable delay. They, however, did not demand any payment under the contract. In any event, we are unable to see upon what principle the defendants can be relieved from accounting to the plaintiff for the surplus of the proceeds, if they were in fact his agents and purchased the cotton for him. Bryce v. Brooks, 26 Wend., 367; Story on Agency, 834; 1 Am. and Eng. Encyc. of Law, 379, and notes; Blot v. Briceau, 51 Am. Dec., 345; Denton v. Jackson, 106 Ill., 433; Williams v. McGraw, 14 Peters, 479; Hornsby v. Fielding, 10 Hiesk. (Tenn.), 367; 52 Ga., 41; Hatcher v. Comer, 73 Ga., 418; Mooney v. Musser, 45 Ind., 115; 56 Mo., 314.

But upon the other view of the case, i. e., that the parties sustained the relations merely of seller and purchaser, we do not think that under the findings of fact we would be authorized to disturb the conclusion of the court below, that the plaintiff had not repudiated the agreement in reference to accepting or receiving the cotton. He was not bound to receive it at Farmersville for the purpose of classification, but after as many as fifty bales of any one grade had been classified by him at Farmersville, in the manner provided in the agreement, he then was required to pay for the same, and direct where the defendants should ship the cotton for him. When the defendants demanded that he should " come to Farmersville and receive the cotton or they would sell it," they made an unreasonable demand, and one not contemplated by the contract. Plaintiff had repeatedly requested them to send him an invoice of the cotton to enable him to classify it, but it appears that they made no direct response to him on this point, and did not comply with his request. It would seem that

it would have been as convenient for the defendants to have sent the invoice as to send the demand for the plaintiff to come to Farmersville. Such action upon the part of the defendants tends to show that they were anxious to sell the cotton on their own account, and that the real motive for doing this was not the failure of the plaintiff to promptly classify the cotton upon the receipt of the samples.

There is not a particle of proof that the plaintiff was attempting to higgle with the defendants, or was acting in bad faith in reference to classifying and accepting the cotton. Of course it was not the duty of the defendants to send the invoice of the cotton unless the contract bound them to do so, but the solution of that question in their favor, should we do so, would not be decisive of the respective rights of the parties upon this appeal. They may not have been required by the terms of the agreement to forward invoices in addition to the " tags and samples," and yet the fact that the plaintiff requested the invoices and delayed attempting to classify the cotton until they could be obtained does not, as we think, in connection with the other circumstances of the case, show that he intended to repudiate or had repudiated the contract, but quite the contrary. The delay was only for a few days, in fact, before the defendants sold the cotton; and they had not notified the plaintiff of the purchases with "samples" until the 20th of November, yet on the 21st they sent him their ultimatum as to his acceptance of the cotton, coupled with a condition which, as we have seen, they had no right to impose. It might be, therefore, that they made this demand even before they had heard from him at all upon the subject. But however this may be, the undisputed fact remains that the plaintiff never did refuse to either accept the cotton or to pay for it. On the contrary, he was " constantly demanding the invoice to enable him to classify and receive the cotton."

The courts will not attempt to make a contract for the parties or to change the terms thereof as they were fixed by the parties themselves; but in this instance, we judge from the proceedings of the court below, that the furnishing of the invoices of the cotton was not only reasonable under the circumstances, but was perhaps contemplated by the parties in making the contract as an incident to its due execution, or at least that the evidence leaves this point doubtful. The contract is silent upon the subject, it is true, and only expressly required the defendants " to send samples to the plaintiff at Sherman," yet we find that the defendants in fact sent in addition to the samples " tags showing the number and weight of each bale," etc. Clearly, then, the words used by the parties did not fully express the entire contract, and the details of the mode and manner in which it was intended to be carried out, as interpreted by themselves. The plaintiff thought that an invoice was necessary to enable him to classify the cotton properly, while the defendants appear to have thought that " the samples and enclosed tags" were sufficient, though it does not

appear that the plaintiff was aware that the "tags" had been sent. It does not appear that there had been any previous purchases of cotton under the contract in hand or under similar arrangements between the parties. The right of the plaintiff to classify the cotton at Sherman under the contract of course included all necessary means to that end, and where the correct method under the contract was involved in doubt, and the parties were not agreed in this particular, we do not think that the plaintiff's conduct under the circumstances, in requesting an invoice before classifying and accepting the cotton, amounted to a repudiation of the contract, or justified the defendants in rescinding the same. This was the conclusion of the court below, and we can not say that it was clearly wrong in view of the findings of fact. The judgment should be affirmed.

*Affirmed.*

Adopted June 7, 1892.