**EARL HAYES RENTS CARS & TRUCKS, a corporation, et al., Appellants,**

v.

**CITY OF HOUSTON, Appellee.**

**No. 16901.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Aug. 4, 1977.

Rehearing Denied Oct. 6, 1977.

**318**

Jamail & Gano, John Gano, Houston, for appellants.

Otis H. King, City Atty., Joseph G. Rollins, Senior Asst. City Atty., Houston, for appellee.

EVANS, Justice.

This is a breach of contract case.

In 1968 the City of Houston let competitive bids for the operation of certain public parking facilities at the Houston Intercontinental Airport, which was then under construction. Earl Hayes Rents Cars & Trucks, a corporation, was the successful bidder, and a formal contract was made for a five year term beginning July 1, 1969 and ending June 30, 1974.

Under this contract, termed a Concession Agreement, the City granted Hayes the "right and privilege" to operate the parking facilities at the airport. The contract also designated various levels in each terminal building as parking areas and specified the number of parking spaces within each area. As compensation to the City, Hayes agreed to pay "a sum equal" to specified percentages of the annual gross revenues to be derived from the operation of the facilities or, alternatively, specified minimum annual guaranteed payments, whichever would be the greater. The contract provided that the City would furnish certain directional signs or graphics and would make office space available to Hayes in one of the terminal buildings.

The grand opening of the Houston Intercontinental Airport was held on June 9, 1969, and on that date Hayes commenced operation of the facilities under the business name "Interpark".

Difficulties between the parties soon developed due to the City's failure to promptly perform some of its affirmative obligations under the contract. The City was unable to make available to Hayes the specified number of parking spaces and to furnish Hayes with signs and office space as agreed. Hayes, at its own expense and with the approval of the Director of Aviation, advanced the funds necessary to construct the office and to purchase the signs. It then sought reimbursement from the City for the amount of such costs and for its claimed loss of revenue due to the City's

failure to provide sufficient parking spaces. The total sum Hayes claimed was $75,-384.70.

Despite continuing efforts on the part of Hayes to reach a settlement with the City, the controversy was never resolved. Finally Hayes decided to withhold the amount of its claim from the monies which it was due to pay the City under the terms of the contract. This resulted in further investigation by the City and in the passage of a resolution authorizing a settlement of the matters in dispute; however, no final settlement was reached. On May 13, 1971 the City, contending that Hayes was in arrears of its required payments, enacted an ordinance providing that at 12:01 that same night, the Director of Aviation would take over the parking facilities and operate the facilities. Pursuant to this authority, Hayes was evicted from the premises and the City thereafter operated the parking facilities for the balance of the five year term.

Hayes subsequently filed this action against the City, alleging damages as a result of the City's actions, and the City counterclaimed, alleging that Hayes was liable for the difference between the guaranteed minimum payments and the net revenues which the City had realized after its take-over of the parking facilities.

The trial court submitted four special issues to the jury. In response to Special Issue No. 1 the jury found that Hayes had expended $47,893.16 for construction of office space and $15,067.59 for signs. The parties had stipulated that Hayes' loss of revenue by reason of the City's failure to furnish the required number of parking spaces was in the sum of $12,423.95. Therefore, based on the stipulation and the jury's finding, Hayes' damages by reason of the City's failure to perform its contractual obligations was established to be in the claimed amount of $75,384.70. The jury also found that Hayes suffered a loss in the amount of $150,000.00 by reason of the City taking over its properties, and that in reasonable probability, Hayes would have made a $400,000.00 profit had it been permitted to continue its operation for the balance of the contract term.

In response to Special Issue No. 2, the jury found that prior to May 13, 1971, the date of the City's take-over of the facilities, Hayes had failed to remit to the City the total sum of $393,787.50. However, in response to Special Issue No. 3 the jury found that after deducting the City's profits from its operation after taking over the facilities, Hayes had not failed to pay to the City any amount of the money due it under the guaranteed payment provisions of the contract.

The trial court entered judgment on the jury's verdict, disregarding the jury's answer to Special Issue No. 2, and awarding Hayes the sum of $150,000.00 in damages, plus interest thereon at 9% per annum from and after May 14, 1971. All other claims for affirmative relief were denied.

On this appeal, Hayes contends the trial court erred in refusing to enter a judgment in its favor for the sum of $400,000.00, plus interest, the amount which the jury found would have been its profits had it been permitted to continue operation for the balance of the five year term. In cross-points of error, the City contends that the trial court erred in refusing to award it the sum of $610,095.42 which it contends the evidence established, as a matter of law, to be the amount which Hayes failed to remit prior to the date of the City's take-over, and, alternatively, for refusing to award it the sum of $393,787.50, which is the amount found by the jury to response to Special Issue No. 2. The City further contends that the trial court erred in awarding Hayes the sum of $150,000.00 plus prejudgment interest for loss of properties resulting from the City's take-over, and prejudgment interest thereon, and that the court also erred in awarding prejudgment interest at the rate of 9% per annum prior to the effective date of the statute increasing the legal rate of interest.

■ Although each party claims that the other breached the contract, neither party requested an issue pertaining to the contract or as to its alleged breach. Nor did

the trial court prepare written findings as authorized by Rule 279, Texas Rules of Civil Procedure. Therefore, in considering the parties obligations under the contract and whether or not there was a breach of such obligations by either party, all factual issues must be resolved in support of the trial court's judgment and any theory of the law which under the pleadings and evidence would tend to support the judgment must be adopted. *Transportation League, Inc. v. Morgan Express, Inc.*, 436 S.W.2d 378, 387 (Tex.Civ.App.—Dallas 1969, writ ref'd n. r. e.). Hayes argues that the evidence conclusively shows the City breached the contract from the date of its inception by its failure to perform its affirmative obligations, and that such breach constituted a repudiation of the contract, excusing Hayes from performance. The City contends, on the other hand, that the evidence conclusively shows that the failure of Hayes to make the required payments constituted the only material breach of the contract, and that the City was entitled to take-over the operation of the facilities, including Hayes' property, and to recover from Hayes the amount of the arrearage.

Since the trial court denied Hayes' claim for recovery of the sum of $400,000.00, as its lost profits resulting from the City's take over, it may be presumed to have found no breach of the contract by the City in taking over operation of the facilities. The City's action in taking over the operation is governed by Section 28 of the contract, which, in pertinent part, provides:

"(a) City shall have the right immediately and without notice, to suspend Concessionaire's rights hereunder and to take over operation of all public parking facilities operated by Concessionaire under the terms hereof, including the use of Concessionaire's installed equipment necessary to operate the facilities, upon the occurrence of any one or more of the following events that, in Director's opinion, results in the parking facilities not being operated for the convenience and benefit of the public or in the manner required herein, and City shall have the right to terminate this Agreement in its entirety (subject to the provisions of Section 31 "Survival of Concessionaire's Obligations" hereof) and all rights of Concessionaire ensuing herefrom upon thirty days written notice if such event or events are not corrected or abated within said thirty day period:

1. Concessionaire shall fail duly and punctually to pay the fees, charges and rentals or to make any other payments when due to City that are required hereunder."

■ Contrary to Hayes' contention, the contract did not require that the City give written notice of termination prior to taking over operation of the facilities under Section 28 of the contract. It is clearly evident from the reading of Section 29, as well as other applicable sections of the contract, that prior written notice was not required under the suspension provisions of Section 28, and the evidence supports the court's implied finding that the City acted in accordance with the terms of the contract in taking over operation of the facilities upon Hayes failure to make the required payments.

■ At the time of the City's takeover, a dispute existed between the parties with respect to whether Hayes was in default of the guaranteed payment provisions of the contract, the City claiming that Hayes was then several hundred thousand dollars in arrears. There is evidence in the record from which the trial court could have concluded that the City's failure to furnish the required number of parking spaces, office facilities and signs was not of such a nature, under the circumstances, as to excuse Hayes' obligation to pay the required compensation. Not every breach of performance will excuse the other party from performance. Where the obligations imposed upon one party are independent of or subsidiary to the obligations imposed upon the other, a breach by one party may not constitute such a repudiation of the contract as will excuse the other party from continued performance. *Scarborough v. Arrant*, 25 Tex. 129 (1860).

"Where there are several terms in a contract, a breach committed by one of the parties may be a breach of a term which the parties have not, on a reasonable construction of the contract, regarded as vital to its existence. Such a term is said to be subsidiary, and breach thereof does not discharge the other party; he is bound to continue his performance of the contract, but may bring an action to recover such damages as he has sustained by the default.

The prevailing rule is that, where a promise is to be performed in the course of the performance of the contract, and after some of the consideration of which it forms a part has been given, it will be regarded as subsidiary, and its breach will not effect a discharge unless there are words expressing the fact that it is a condition precedent, or unless the performance of the thing promised is plainly essential to the contract." 17A C.J.S. Contracts § 476, p. 673.

Furthermore, the refusal by one party to honor its obligations under a contract will not constitute an anticipatory breach, if made in good faith and as the result of misunderstanding or mistake. *Englehart v. Volunteer State Life Ins. Co.*, 195 S.W.2d 798, 802 (Tex.Civ.App.—Eastland 1946, writ ref'd n. r. e.); *Bell v. Maximos*, 85 Tex. 140, 19 S.W. 1070 (1892).

▋ The City's failure to perform its obligations under the contract did not render performance by Hayes impossible, and Hayes continued to operate the facilities under the contract. The trial court was justified in concluding that Hayes had elected to continue the contract in effect and that the City's breach did not excuse Hayes' failure to perform. *Scarborough v. Arrant*, 25 Tex. 129 (1860); *Jenkins v. Northwestern Pipe & Supply Co.*, 299 S.W. 857 (Tex.Com.App.1927).

▋ The trial court's judgment denying the City's claim for arrearage was, in effect, a recognition of the validity of Hayes' claim for the sum of $75,384.70, which Hayes had withheld from the guaranteed minimum payments it was required to make to the City. The trial court did not err in refusing to affirmatively provide in its judgment that Hayes should recover said amount from the City, because such an award would have permitted Hayes to recover judgment for monies which it already had in its possession.

▋ The trial court did not err in awarding Hayes the sum of $150,000.00 based upon the jury's finding that such sum represented that amount of Hayes' loss by reason of the taking of its properties by the City. The City does not attack the evidentiary basis of the jury's findings, but contends that under the contract the title to the properties became vested in it at the time of its take-over of the parking facilities. Contrary to the City's contention, the contract provides only that the City acquired title to those improvements that could not be removed without damage to the premises or to other City property. The contract expressly provides that Hayes retained the title to all removable properties. The nature and value of the properties in question were matters factually in dispute, and the jury's verdict on the issue must be given conclusive effect.

▋ The trial court's judgment denying the City's claim for the alleged arrearages under the guaranteed minimum payment provisions of the contract must also be sustained. It is the City's contention that under the uncontroverted evidence it was entitled to a recovery for the full amount of its claimed arrearages in the sum of $610,095.42 or, alternatively, for the amount of $393,787.50 based upon the jury's finding in response to Special Issue No. 2. The question of whether and to what extent there was an arrearage at the time of the City's take-over was a matter in dispute, and the record does not establish as a matter of law that the amount of the arrearage was the sum claimed by the City. The jury's finding in response to Special Issue No. 2 established the amount of the arrearage to be in the sum of $393,787.50. However, the jury also found, in response to Special Issue No. 3 that after deducting the City's profits subsequent to its take-

**322**

over of operations, Hayes had not failed to pay any amount due the City under the minimum payment provision of the contract. Under the terms of the contract, the City had the right to elect whether to terminate the contract in its entirety, or to resume possession and continue operations under the contract. The City did not elect to terminate the contract, but instead elected to take-over the operation of the facilities without terminating Hayes' continuing obligation under the minimum payment provisions of the contract. Therefore, at the City's own election, Hayes remained liable under the contract for a "sum equal" to the total amount of the minimum payments due for the entire contract term, less such profits as the City might receive from its operation of the parking facilities. The City did not object to the submission of Special Issue No. 3, and has not attacked the evidentiary basis of that issue. Since the jury found in response to Special Issue No. 3 that after deducting the City's profits, Hayes had not failed to pay any amount due under the minimum payment provisions of the contract, the trial court was justified in disregarding Special Issue No. 2, and in denying the City's claim for recovery based upon that finding.

The City's cross point contending that the judgment erroneously awarded prejudgment interest at the rate of 9% per annum prior to September 1, 1975, the effective date of the amendment of Tex.Rev. Civ.Stat.Ann. art. 5069–1.05 must be sustained. Where interest is allowed as damages, it must be computed at the rate which was legal during the particular time in question. *Trinity Portland Cement Division v. Coastal Industrial Water Authority*, 551 S.W.2d 76 (Tex.Civ.App.—Houston [1st Dist.] 1977).

The judgment of the trial court is modified so as to provide that interest will accrue on the amount of the award at the rate of 6% per annum from May 14, 1971 to September 1, 1975, and thereafter at the rate of 9% per annum until paid; in all other respects the judgment of the trial court is affirmed.