**AG PRO, INC., Plaintiff-Appellant,**

**v.**

**Bernard A. SAKRAIDA, Defendant-Appellee.**

**No. 74–1712.**

United States Court of Appeals, Fifth Circuit.

April 24, 1975.

Rehearing Denied June 9, 1975.

Frank H. Hunter, El Paso, Tex., J. Pierre Kolisch, Portland, Or., for plaintiff-appellant.

J. F. Hulse, Stephen B. Tatem, Jr., El Paso, Tex., for defendant-appellee.

Before BROWN, Chief Judge, and GODBOLD and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Today marks the third appellate appearance of this claim for infringement of a patented dairy barn flushing system. This suit for infringement of patent 3,223,070 was originally brought by Ag Pro, Inc., in 1968. A summary judgment on defendant Sakraida's motion provoked the first appeal. This court reversed and remanded for trial on the merits.[1] The second appellate go-around was an appeal from an adjudication of patent invalidity. We again reversed, but this time remanded specially for a trial court resolution of the defendant's appellate court motion for a new trial under Fed.R.Civ.P. 60(b)(2) based on newly discovered evidence of patent invalidity.[2] The district court granted the motion. Because in our view, the record on the motion establishes that defendant failed to exercise due diligence to discover the new evidence prior to entry of the former judgment, we once more reverse.

Our mandate in Ag Pro II directed the district court to enter a judgment holding the patent valid, hold a hearing on and determine Sakraida's Rule 60(b)(2) motion and, without more, certify the motion hearing record to this court. These functions have been duly accomplished, and the matter is back with the record of those supplemental proceedings. At the conclusion of its hearing the district court found that the new evidence adduced by Sakraida standing alone would produce a different result, that Sakraida had exercised due diligence and could not have discovered the evidence in time to move for a new trial under Fed.R.Civ.P. 59(b).

The patent in suit relates to a dairy barn flushing system. It involves the construction of slightly sloping barn floors which incorporate a means for storing and quickly releasing a volume of water on the floor. When the floor is flooded, it is cleansed of manure and debris without hand labor. In Ag Pro II we found that this system met the requirements of novelty, usefulness, and nonobviousness to qualify as a valid patent.

Sakraida's newly discovered evidence consists of alleged prior art which would purportedly invalidate the patent. At the hearing below Sakraida testified that purely by chance he met Hubert Meyer the owner of Mission Dairy after the time he could have moved for a new trial under Rule 59(b) had expired. After learning of Sakraida's litigation, Meyer told Sakraida that Meyer's Mission Dairy contained a flushing system which was substantially identical to the patented system. Meyer also furnished Sakraida at that time with the names of other persons who could testify to the state of the art in water flush systems. Sakraida testified that this was the first time

1. Ag Pro, Inc. v. Sakraida, 437 F.2d 99 (5th Cir. 1971).
   (Ag Pro I)

2. Ag Pro, Inc. v. Sakraida, 474 F.2d 167, rehearing denied, 481 F.2d 668 (5 Cir. 1973).
   (Ag Pro II)

he had full knowledge of these facts. However, the evidence clearly establishes that prior to the original trial Sakraida was aware that Mission Dairy was using a flushing system that was a possible source of prior art. In addition, Sakraida had requested W. C. Fairbank, an agricultural expert, to advise him on the state of the art. Fairbank testified that he told Sakraida or his attorney sometime before October, 1969 of the existence of the Mission Dairy and its possible importance. It is without dispute that Sakraida considered the Mission Dairy information important enough to request an associate, Aubrey Wisdom, to visit the Mission Dairy to examine the flushing system. Wisdom went to the dairy on Sakraida's behalf and asked to see the system. The manager of Mission Dairy stated to Wisdom that he did not want to get involved, and that he did not think it was right for him to show Wisdom the flushing system. It is further undisputed that at that same time Mission Dairy was open to the general public. Meyer testified that he had asked the manager not to answer questions about the equipment, but that access to visit the dairy was never denied anyone. After learning of Wisdom's rebuff, Sakraida abandoned further inquiry as to the Mission Dairy flushing system until his post-trial chance encounter with Meyer.

Sakraida contends that these facts demonstrate that he made a good faith effort to inquire into the facts surrounding Mission Dairy. He claims that the information given to him about this installation was based on rumor and hearsay, and that he could not pursue every possible lead to sources of prior art. The problem for Sakraida's contention is the high standard of proof required to substantiate Rule 60(b)(2) relief.

■■ A motion for a new trial under Fed.R.Civ.P. 60(b)(2) is an extraordinary motion, and the requirements of the rule must be strictly met. Strauss v. United States, 337 F.2d 853 (1964). The motion may not be granted unless (1) the evidence was discovered following the trial; (2) due diligence on the part of the movant to discover the new evidence is shown or may be inferred; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; (5) the evidence is such that a new trial would probably produce a new result. Ledet v. United States, 297 F.2d 737, 739 (5th Cir. 1962).

■ This reasoning is apropos to patent litigation. See Valmont Industries, Inc. v. Enresco, Inc., 446 F.2d 1193 (10th Cir. 1971) in which the court held that a diligent search would have disclosed a prior German patent and, therefore, denied the Rule 60(b)(2) motion on the ground that due diligence was not exercised. See also, United States v. 41 Cases, 420 F.2d 1126 (5th Cir. 1970); Stiers v. Martin, 277 F.2d 737 (4th Cir. 1960); and Greenspahn v. Joseph Seagram & Sons, Inc., 186 F.2d 616 (2d Cir. 1951).

Sakraida's expert suggested Mission Dairy as a possible source of prior art. Sakraida accorded sufficient soundness to this advice to send an associate to examine the dairy. Under the facts of this case, Sakraida's duty did not end with the Mission Dairy manager's refusal to show the flushing system to Wisdom. No effort was made to contact Meyer, the owner; and judging from his present full cooperation, there is no reason to believe that he would have been reluctant to give Sakraida the information. Even if Meyer had refused, discovery procedures could have been initiated. For that matter, Wisdom or Sakraida could have visited the dairy along with other members of the public who were then being permitted to view the premises. The invention would have been generally open and obvious. In short, the exercise of a reasonable amount of diligence would have armed Sakraida with the same information he belatedly seeks to put before the court.

■ That spirit of finality which is implicit in all judgments, commands that courts be cautious in exercising the discretion vested in them to reopen proceedings for a new trial based on newly

144

discovered evidence. While the sound discretion of a district judge in granting such a motion is not to be reversed except for clear abuse of discretion, Lloyd v. Gill, 406 F.2d 585 (5th Cir. 1969), that exercise is not free from review. In the case at bar, the evidence produced to show due diligence by Sakraida, taken in a light most favorable to the finding by the court below that the judgment following a completed trial should be set aside, is insufficient. The "new" facts were easily available prior to the trial, and the defendant had reliable information that they were so available. His half-hearted effort to uncover them is legally not enough. Sakraida did not exercise due diligence in preparation of his prior art defense. The grant of a new trial accordingly must be reversed. Our prior determination of patent validity is reaffirmed, and the case is remanded for further proceedings on the issue of infringement in accordance with our mandate in *Ag Pro II.* Neither singly nor *in solido* should our reversals be taken as intimating any view on the merits of the remaining issue or upon the admissibility or probity of this "new" information in the trial thereof.

Reversed and remanded.