JOHNSON WASTE MATERIALS et al.,
Plaintiffs-Appellants,

v.

F. Ray MARSHALL, Secretary of Labor,
United States Department of Labor,
Defendant-Appellee.

No. 77–2556.

United States Court of Appeals,
Fifth Circuit.

Feb. 11, 1980.

O. C. Hamilton, Jr., Neil E. Norquest, McAllen, Tex., for plaintiffs-appellants.

James R. Gough, U. S. Atty., Thomas J. Allen, Atty., Dept. of Labor, Washington, D. C., for defendant-appellee.

Before THORNBERRY, GEE and HATCHETT, Circuit Judges.

GEE, Circuit Judge:

In this case we are called upon to decide whether a judgment debtor can prevail in an independent action to reform a judgment under Fed.R.Civ.P. 60(b)[1] based

---

1. Fed.R.Civ.P. 60(b) provides in pertinent part:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore de-nominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one

on evidence that he had previously paid a portion of the obligation from which the judgment arose, if he has failed to demonstrate that he exercised due diligence to secure that evidence at the time of trial. We hold that in the exceptional circumstance where the evidence of payment is virtually conclusive, mere negligence on the part of the judgment debtor does not preclude reformation of the. judgment in a Rule 60(b) independent action. Accordingly, we find it necessary to reverse the trial court's grant of summary judgment for the Secretary of Labor and to remand for further factual findings concerning the employers' efforts to secure the evidence at the time of trial.

The facts of this case are relatively simple, though its procedural history is rather complex. In 1973 the Secretary of Labor (Secretary) brought suit to enjoin appellants[2] and Jose S. Fernandez[3] (hereinafter collectively referred to as "defendants") from violating the minimum wage, overtime, and recordkeeping provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. (1976), and to restrain them from continuing to withhold unpaid wages due under the Act. On July 3, 1975, the trial court entered a judgment against all the defendants, enjoining them from violating the Act and from withholding compensation due 23 of their employees in the total amount of $104,204.

In computing the amount of the judgment, the trial court had before it no records that showed the number of hours actually worked by the employees or the amount of wages that they had in fact been paid. Defendants were apparently unable to locate the cancelled checks by which the employees had been paid.[4] In calculating the amount of money due the defendants' employees, the trial court, therefore, was forced to rely on the testimony of the employees and the answers of defendant Fernandez to the Secretary's written interrogatories. Despite testimony that some employees worked more than 40 hours in some work weeks, the trial court found that all employees worked "at least 40 hours a week at every location." Moreover, although the employees did not testify as to the precise times that their wages were changed from one amount to another, the trial court found it clear from their testimony that they "were paid variously a weekly wage of $18, $24, $30, $40, $50, $60 and during the latter part of 1974, $70.00." To fix specific dollar amounts, the trial court looked to the wage schedule set out in Fernandez' answers to the Secretary's interrogatories.[5] Based on all of this evidence the trial court computed the amount owed each employee for a given work week by multiplying the minimum wage obligation of $1.60 per hour by 40 hours and subtracting from that total "the greater amount that defendant Fernandez claims to have paid them, i. e., $18, $36, and $42 a week" for the particular week in question. In this fashion, the trial court ascertained that the defendants owed

---

year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. (emphasis added).

2. Appellants in this action are Johnson Waste Materials, Inc. (JWM); Jim Johnson Ropa Usada (JJRU), a partnership composed of James H. Johnson and Wayne Johnson; James H. Johnson, president of JWM and a partner in JJRU; and Wayne Johnson, a partner in JJRU.

3. According to the trial court's findings, Mr. Fernandez was an officer or manager of JWM who acted "directly or indirectly" in JWM's interests in relation to its employees. Fernandez alone of the original defendants does not participate in this appeal.

4. In answer to plaintiff's written interrogatories, defendant Fernandez indicated that the location of the cancelled checks was "Unknown."

5. Fernandez indicated that the employees had been paid as follows: from October 18, 1970 to June 1971, $18 per week; from June 1971 to January 1972, $30 to $36 per week; and from January 1972 to January 18, 1974, $40 to $42 per week.

a total of $104,204 to their employees. We affirmed the trial court's findings of fact and conclusions of law in an unpublished per curiam opinion. *Usery v. Johnson Waste Materials, Inc.,* No. 75–3215 (5th Cir. Apr. 23, 1976).

Slightly more than one year after the entry of judgment against defendants, on August 18, 1976, defendants moved to stay the execution or enforcement of the judgment against them. On the following day they filed an independent action in equity to set aside or reform the judgment under Fed.R.Civ.P. 60(b), alleging accident, mutual mistake, newly discovered evidence, and a possible fraud upon the court. The Chief Judge of the Southern District of Texas ordered that a hearing be conducted to determine the propriety of staying the original judgment pending the determination of the action in equity. He specifically noted that the parties would be allowed at the hearing to adduce evidence on whether defendants' claim of newly discovered evidence was "meritorious or simply dilatory."[6]

On March 4, 1977, a hearing was held before the original trial judge. Defendants presented the testimony of two witnesses, Mr. Fernandez and Carl S. Chilton, Jr., a certified public accountant. Fernandez testified that in June 1976, over a year after the trial, in the course of an IRS audit, he had found bank statements and cancelled checks of the Acapulco Company.[7] These indicated how much each employee had received weekly by check during the years in question. Mr. Chilton testified that by using these records and by assuming a 40-hour work week, he calculated that the defendants owed their employees only $50,-644, not $104,204, the amount of the judgment. Defendants also sought to have ten employees testify at the hearing, but the court refused to hear their testimony.[8]

On March 7, 1977, the court granted defendants' motion to stay the July 3, 1975, judgment until the disposition of defendants' independent action. In the same order, however, the court denied a "motion to reform or set aside the judgment entered in this cause on July 3, 1975," on the ground that Fernandez' testimony did not constitute "newly discovered evidence . . . but on the contrary, [was] merely newly produced evidence." Such a motion, however, was not properly before him.

On the following day, the Chief Judge consolidated defendants' independent action with the original cause of action against defendants and assigned the consolidated

---

**6.** In his memorandum, the Chief Judge noted that defendants would be permitted to present evidence on the other grounds alleged in their independent action. He cautioned the defendants, however, "that it is not the function of an independent action to relitigate actions finally determined in another action between the same parties, especially so when that initial action has been determined worthy of affirmance by a Court of Appeals, and further that a hearing on a Motion to Stay Execution or Enforcement of Judgment is likewise not a forum for the relitigation of determined issues."

**7.** The trial court found as a matter of fact that the Acapulco Company was a used clothing establishment, operated individually by James H. Johnson; that Mr. Johnson had plenary authority over the affairs of the Acapulco Company "including its so-called manager, Mr. Jose S. Fernandez"; and that most of the work performed by employees involved in the instant suit was performed at the Acapulco Company.

**8.** The trial court determined that the testimony of these employee witnesses would have no weight because the influence that Fernandez

"had over them and still has over them would offset any credibility" they might have. The court did, however, allow defendants' counsel to dictate into the record a summary of the facts to which these witnesses would have testified had they been allowed to do so. Defendants' counsel indicated that several of the witnesses would corroborate the accuracy of the records with respect to their hours and wages and that others would testify that they had worked as little as five or six months during the 39-month period, notwithstanding the fact that the trial court had awarded them back wages for all 39 months. He also asserted that one witness would testify that she saw some records of the Acapulco Company being stolen and that the thief had told her that she intended to turn the records over to the Wage and Hour Department investigator. This latter testimony bore on Mr. Fernandez' failure to search adequately for the records at the time of trial because he believed they had been stolen. *See* n.9, *infra.*

case to the judge who presided at the hearing. Defendants subsequently filed a motion to rescind the consolidation order, which was denied.

On June 21, 1977, the trial judge granted the Secretary's motion for summary judgment based on his conclusion that the evidence presented at the March 4 hearing "is, as a matter of law, not newly discovered but merely newly produced evidence." He concluded that to deny the motion for summary judgment in this case

> would not only be a violation of the newly discovered evidence rule, but might well encourage litigants to withhold pertinent documents in one trial and when ruled against, seek to reopen it at a later date by then producing the evidence, thus presenting each alternative defense in a separate action.

All of the defendants, with the exception of Jose Fernandez, appeal from this adverse judgment.

Defendants allege four grounds of error, which they submit require reversal. They contend that: (1) the bank statements and cancelled checks should have been admitted into evidence because they constituted "newly discovered evidence" within the meaning of Fed.R.Civ.P. 60(b)(2); (2) the checks should have been admitted on equitable grounds pursuant to Fed.R.Civ.P. 60(b)(5) as evidence that the judgment beneficiaries had already been paid over half of the amount of the judgment; (3) the defendants should have been afforded a hearing on the merits of their independent action; and (4) the cases should not have been consolidated and assigned to the judge who presided over the March 4 hearing. Because we conclude that defendants' second contention is dispositive of this appeal, we do not reach issues (3) and (4).

### Newly Discovered Evidence

█ Under Fed.R.Civ.P. 60(b)(2), the court may relieve a party from a final judgment because of "newly discovered evidence which by *due diligence* could not have been discovered in time to move for a new trial under Rule 59(b)." (emphasis added).

The rule further provides that a *motion* based on newly discovered evidence shall be made "not more than one year after the judgment . . . was entered . . ." Rule 60(b) does not limit, however, "the power of a court to entertain an *independent action* to relieve a party from a judgment . . . ." (emphasis added). Thus, we may properly consider defendants' independent action for reformation on the ground of newly discovered evidence, even though such action was brought more than one year after judgment.

█ To prevail on a motion for a new trial based on newly discovered evidence under Rule 60(b)(2), the movant must show that the evidence was discovered following the trial, that he used due diligence to discover the evidence at the time of the trial, that the evidence is not merely cumulative or impeaching, that it is material, and that a new trial in which the evidence was introduced would probably produce a different result. *Ag Pro, Inc. v. Sakraida*, 512 F.2d 141, 143 (5th Cir. 1975), *rev'd on other grounds*, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976); *Ledet v. United States*, 297 F.2d 737, 739 (5th Cir. 1962). We have characterized such a motion as "an extraordinary motion" and have demanded that the requirements of the rule set forth above be strictly met. *Ag Pro, supra* at 143. An independent action to reform or set aside a judgment because of newly discovered evidence is not less extraordinary than a Rule 60(b)(2) motion. *See Carr v. District of Columbia*, 177 U.S.App.D.C. 432, 442, 543 F.2d 917, 927 (D.C.Cir.1976) (imposing the same requirements for an independent action based on newly discovered evidence). It may even be more so. *See 7 Moore's Federal Practice* ¶ 60.37[1], at 623 (2d ed. 1979) ("Under circumstances which render it *manifestly unconscionable* that a judgment be given effect, an independent action will lie to enjoin its enforcement because of newly discovered evidence; but properly the rules which limit equitable interference on this ground are stringent.") (footnote omitted) (emphasis added). Thus, parties bringing an independent action based on

newly discovered evidence bear a heavy burden to demonstrate that they have satisfied the requirements outlined above.

■ Defendants have failed to carry that burden. Specifically, testimony given by Jose Fernandez, set out in the margin,[9] at the hearing on defendants' motion to stay the July 3, 1975, judgment, demonstrates that defendants failed to exercise due diligence to secure the evidence at the time of trial. Given Fernandez' testimony that he "just couldn't find" the cancelled checks at the time of trial because he "just had misplaced them at home" and other statements to that effect, we agree with the lower court that the evidence was not "newly discovered" but merely "newly produced."

■ Defendants contend that Fernandez should not have been expected to conduct a thorough search for the records, having been informed by one employee that she had seen another employee steal certain records from a cash register.[10] To support this proposition they cite *Serio v. Badger Mutual Insurance Co.*, 266 F.2d 418 (5th Cir.), *cert. denied*, 361 U.S. 832, 80 S.Ct. 81, 4 L.Ed.2d 73 (1959). *Serio*, however, is clearly distinguishable from the instant case. In *Serio* all the parties believed that certain inventory records had been destroyed in a fire because they had not been kept in a safe or on other premises as required by the fire insurance policy that was the subject of that suit.[11] Without the plaintiff's knowledge, however, the records had been inadvertently moved by an employee to another location, where plaintiff found them several months later. The court granted a new trial on the ground that Serio was entitled to believe that the records had been burned; "[so] believing a

9. Q  [By defendants' attorney] Did you have, at that time, all of the bank statements and cancelled checks of the Acapulco Company?
A  No, sir.
Q  Why did you not have them all?
A  Well, I just couldn't find them—all of them, at that time.
Q  Is there any other reason why you didn't have them?
A  Well, no, *just had misplaced them at home.*
Q  Did you later find almost all of your bank records?
A  Yes, sir.
Q  About how long after the trial was it that you found them?
A  Over a year.
THE COURT: Let me take this witness. Where did you find them?
A  At home, sir.
THE COURT: Where?
A  In a barrel with clothes on top.
THE COURT: Didn't you have every opportunity to get those records here when we tried this case?  You are under oath, now.
A  Yes, sir.
THE COURT: Well, why didn't you get them?
A  Well, I thought I had all of them, sir.
THE COURT: Well, they were your records, weren't they?
A  Yes, sir.
THE COURT: Well, who knew whether they were all or not, if you didn't know?
A  *Just that I had them at home and my wife misplaced them somewhere.*
THE COURT: It wasn't your wife.  If they were misplaced, you did it.

A  Well, *they were moved around, sir, at home.*
THE COURT: Go ahead.
Q  Mr. Fernandez, I understand you found them in a barrel with some clothing on top of them?
A  Yes, sir.
Q  *At your lawyer's request during the time of the trial, did you look everywhere you knew to look for them?*
A  *I guess I didn't.  I didn't quite look good enough, because some of them were stolen.*
Q  Some of them were stolen?
A  Yes, sir.
THE COURT: Well, where are they?
A  Sir?
THE COURT: Where are the stolen records?
A  Well, some of them—maybe two or three months later, they didn't appear.
THE COURT: They did appear?
A  Not yet, no sir.
THE COURT: How do you know they were stolen?
A  Well, rumors that some girl had taken some papers.
THE COURT: Rumors?
A  Well, actually, some of the girls—one of the members saw another member take some of the papers.
(emphasis added).

10.  *See* n.9 *supra.*

11.  Plaintiff's bookkeeper testified that she had inadvertently left. other inventories and the books out of the safe before the fire.

prudent person would not have been expected to conduct a search." *Id.* at 421. In contrast, on the facts before us, Fernandez did not act as a "prudent person" would have; the gist of his testimony was that he knew he had the records but had simply misplaced them. That he "didn't quite look good enough" because of "rumors that some girl had taken some papers" does not in our view excuse his failure to exercise due diligence. Defendants have thus failed to carry their burden of showing that they exercised due diligence.[12]

### Equitable Considerations

Fed.R.Civ.P. 60(b)(5) permits the court on motion to relieve a party from a judgment where "the judgment has been satisfied, released, or discharged, . . . or it is no longer equitable that the judgment should have prospective application." Unlike Fed.R.Civ.P. 60(b)(2), Rule 60(b)(5) on its face does not require that the evidence supporting the motion be "newly discovered" or that the movant have exercised "due diligence" to secure it. Nor have we been willing to read such requirements into a 60(b)(5) motion involving prior payment of an obligation on which a judgment is based. In *Ferrell v. Trailmobile, Inc.*, 223 F.2d 697 (5th Cir. 1955), the defendant appealed from a final judgment based on his failure to pay one of eighteen installments for the purchase of a truck-trailer. After judgment was rendered against him, he succeeded in securing copies of three money orders demonstrating that he had in fact made that payment. In reversing the district court's denial of defendant's motion for a new trial under 60(b), we stated:

> If, in fact, *practically conclusive evidence* shows that the appellant had actually paid all eighteen installments for the purchase of the trailer, it is obvious that the *judgment should be set aside to prevent a manifest miscarriage of justice.* In such a case, the ends of justice may require granting a new trial *even though proper diligence was not used* to secure such evidence for use at the trial.

*Id.* at 698 (emphasis added).

Our decision in *Ferrell* is fully justified by equitable considerations. There is much less reason to require due diligence when a party has conclusive evidence that he has paid a portion of the judgment than when a party presents "newly discovered evidence." In the former instance, the judgment beneficiary in fact receives everything to which he is entitled; he is simply denied recovery of a windfall. On the other hand, where a court grants a new trial based on "newly discovered evidence" (other than evidence of payment), the judgment beneficiary will almost certainly be deprived of the judgment in his favor. *See Ag Pro, Inc. v. Sakraida*, 512 F.2d at 143 (motion under Rule 60(b)(2) granted only if "the evidence is such that a new trial would *probably produce a new result*") (emphasis added). It is obvious, therefore, that the prejudice to the judgment beneficiary is substantially less, if there is any prejudice at all, when he is merely deprived of a windfall recovery than when he is deprived of any recovery at all.

Moreover, requiring due diligence when there is proof of payment works an undue hardship on the judgment debtor. He is forced to pay a second time an obligation he can prove he has already discharged, merely because he was negligent in securing the proof. Given that the usual purpose of a civil suit is to exact compensation, not to punish the one at fault, it would be manifestly unjust to compel *double* compensation on the basis of negligence alone.

There is no doubt that the records produced by defendants in the instant case constitute "practically conclusive evidence" of payment of over half of the amount that the trial court determined the employees were owed. The equitable considerations

---

12. At the original trial Fernandez and JWM were found to be joint employers. Fernandez' failure to exercise due diligence may thus be imputed to JWM. Moreover, neither JWM nor any of the other defendants has attempted to prove his own due diligence to discover and produce the records.

underlying *Ferrell* would thus seem to be applicable here. As noted above, however, *Ferrell* involved a *motion* under Rule 60(b), while the instant case was brought as a Rule 60(b) independent action. We are thus confronted with the question of whether *Ferrell* should be applied to an independent action.

■ The language of Rule 60(b) does not compel us to distinguish *Ferrell*. The power of a court to entertain an independent action under Rule 60(b) is not conditioned by the language of that rule on a finding of due diligence or newly discovered evidence.[13] The same is true of a motion under 60(b)(5), as we noted above.

The Secretary urges us to distinguish 60(b) motions filed within a year after the entry of judgment, like *Ferrell*, from independent actions, like this one, filed after more than one year. As authority, he cites a recent case in which we noted that Rule 60(b) "continues to reflect a strong policy favoring an end to litigation by severely restricting the relief available after the one year limit has run." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1977). The policies underlying *Rozier*, however, are completely inapposite here. The court in *Rozier* was comparing a Rule 60(b)(3) motion based on "fraud (whether heretofore denominated intrinsic or extrinsic), or other misconduct of an adverse party" with an independent action "to set aside a judgment for fraud upon the court." Fed.R.Civ.P. 60(b) (emphasis added). There are several reasons evident on the face of the rule to restrict a party's ability to obtain relief in an independent action predicated on fraud. First, the rule sets a one-year time limit for a motion made under Rule 60(b)(3). Second, the rule drastically limits the kind of fraud for which a party can bring an independent action. Thus, the rule itself embodies a policy that looks with disfavor on fraud actions brought more than one year after the entry of judgment.

In contrast, there is no one-year time limit on motions under Rule 60(b)(5). Moreover, an independent action "to relieve a party from a judgment" is not restricted in any way. In fact, this provision is even *broader* than the language of 60(b)(5). Finally, the portion of Rule 60(b) that deals with independent actions is expressed in the disjunctive—a court may relieve a party from a judgment *or* set aside a judgment for fraud upon the court. Considerations that bear on one ground may thus not bear on the other. There is good reason, therefore, not to extend our restrictive policy for independent actions based on "fraud upon the court" to independent actions "to relieve a party from a judgment."

Several additional considerations weigh heavily in favor of applying the *Ferrell* rationale in independent actions. We have repeatedly noted that Rule 60(b) is to be given a liberal construction:

> In analyzing the 60(b) aspect, *we recognize that Rule 60(b) is to be construed liberally to do substantial justice.* [citations omitted] The rule is broadly phrased and many of the itemized grounds are overlapping, freeing Courts to do justice in hard cases where the circumstances generally measure up to one or more of the itemized grounds.

*Laguna Royalty Co. v. Marsh*, 350 F.2d 817, 823 (5th Cir. 1965) (emphasis added). *See also Fackelman v. Bell*, 564 F.2d 734, 735 (5th Cir. 1977); *Serio v. Badger Mutual Insurance Co.*, 266 F.2d at 421.

■ A liberal construction is particularly appropriate where equitable considerations are involved. Reducing the judgment here by the amount that defendants have

---

**13.** In his order of March 7, 1977, the trial court focused on whether the evidence presented at the March 4 hearing was "newly discovered." In neither their motion to stay the July 3, 1975, judgment nor their independent action had the defendants plead that they were entitled to reformation on account of equitable considerations under Rule 60(b)(5). Nevertheless, because the issue was raised by their evidence and trial of it implicitly consented to, they may raise this issue on appeal. Fed.R.Civ.P. 15(b).

already paid will not deprive the employees of the wages that they properly earned. When defendants pay the remainder of the judgment, the employees will have received the full amount to which the trial court determined they were entitled. They will only be denied a windfall recovery.[14]

■ Moreover, we have stated that an independent action for relief may be treated as a 60(b) motion so long as the adverse party is not prejudiced. *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 n.7 (5th Cir.), *cert. denied*, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970). Because a motion under Rule 60(b)(5) need only be brought within a reasonable time and not within one year after the entry of judgment, the Secretary is not prejudiced by the fact that defendants chose to bring an independent action fourteen months after the entry of judgment rather than make a 60(b)(5) motion. We agree with the conclusion of the Third Circuit that "a district court does not have the discretion to require two satisfactions, [when] the opposing party has suffered no prejudice from the moving party's delay in raising the satisfaction issue." *Sunderland v. City of Philadelphia*, 575 F.2d 1089, 1090–91 (3d Cir. 1978).

The Secretary contends that *Ferrell* cannot control the instant case, citing *Anderson v. Mt. Clements Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). The Secretary's reliance on *Anderson* is misplaced. *Anderson* held only that in a suit brought under the Fair Labor Standards Act of 1938 the burden was on the employer to come forward at trial with evidence of their employees' wages and hours. It did not address the issue of whether the employer, having already paid part of a judgment, must pay the same debt twice.

Finally, the Secretary seeks to distinguish *Ferrell* on the ground that the defendant in that case had no reason to withhold evidence of the installment payments since he sought to establish at trial that he had paid, whereas defendants in this case had a reason for concealing the cancelled checks. He argues that the checks would have demonstrated that they had paid their employees less than the minimum wage, contrary to their position at trial.

Had there been evidence adduced at the March 4 hearing that defendants intentionally withheld the checks in order to bolster their defense, we would have no difficulty in refusing to reform or set aside the July 3, 1975, judgment. The evidence, however, merely indicated that the defendants had failed to exercise due diligence in securing the records.[15] Fairness requires, therefore, that we remand this case to the trial court so that it can make factual findings with regard to whether defendants' failure to produce the records at trial was intentional or reckless, which would bar reformation, or merely negligent, which would not. We hold today only that defendants' lack of due diligence cannot preclude reformation of the judgment, given the well-nigh conclusive evidence of their partial satisfaction of the debts underlying it.

REVERSED and REMANDED.

---

14. Even if the judgment is reformed, some employees will receive a greater amount than that which they would have testified they were owed. *See* n.8, *supra*.

15. According to Mr. Fernandez and Mr. Chilton, the records were discovered in June 1976 in a barrel of old clothing in Mr. Fernandez' home, during the course of an IRS audit to determine whether the defendants owed payroll taxes on the wages found at trial to be owed their employees.