## FRANKFURT FINANCE CO. v. TREADAWAY.
### No. 13167.

Court of Civil Appeals of Texas. Dallas.
Feb. 6, 1942.

Rehearing Denied March 6, 1942.

Leake, Henry, Young & Golden and J. Manuel Hoppenstein, all of Dallas, for appellant.

No one appearing for appellee.

YOUNG, Justice.

Appellant's suit, as plaintiff in the trial court, was for special damages in the sum of $5,000, arising under a written lease, through failure of the tenant Treadaway to surrender possession after sale of realty, in alleged violation of the lease terms. Alternatively, recovery was sought for an unpaid amount of rent. Judgment was rendered for an aggregate of past-due rentals, but above claim for damages was denied, with resulting appeal. Plaintiff's case turns, in the main, on a proper construction of the following instrument of lease, of date April 1, 1936:

"We the undersigned owners of vacant lots located in Dallas County city of Dallas, situated at corner of Bryan & Olive Streets better known as South East corner of Bryan & Olive Sts., Size approximately 60 ft on Bryan St and 130 ft on Olive St., do hereby agree to lease to J A Treadaway for a period of five years from June 1st, 1936, for $50.00 monthly payable in advance with an additional three years option at same rental. It is understood that any improvements placed on said lots during such period belongs to said J A Treadaway and he has the privilege to remove same at any time provided of course that rentals are paid as agreed, he shall have privilege to fence, to rerent, or sublet in fact to handle to his advantage as long as lot is not disturbed, adding gravel if needed. Lessor has the privilege of cancelling lease on said property in event of sale or of placing permanent improvements on same by giving said J. A. Treadaway sixty day written notice of same, in event of death of said J A Treadaway his wife or Executor of his estate shall have the privilege of immediate cancellation of said lease provided they see fit to do so., Lessors may forfeit this lease or pursue any remedy provided by law for failure to pay rent as herein promised.

(Signed)   Mrs. Maud Littleton   Lessor
(Signed)   Homan Starke   Lessor
(Signed)   J A Treadaway   Lessee."

Appellee Treadaway drew up the lease, testifying that, at the time, he had no actual information as to what part of the footage was owned by each lessor, except that, together, they had title to the entire lot; that in the negotiations, he dealt only with Homan Starke who handled the transaction for both owners. All rentals up to January 1, 1938, were paid in one check to Mr. Starke, who later remitted $11.50 monthly to Mrs. Littleton.

It appears that a strip 20 x 90 ft. at the corner of the named streets was the property of Mrs. Littleton, the remainder of the leased ground being owned by Starke. On Oct. 1, 1937, Mrs. Littleton sold her lot to Victor Frankfurt for $4,000, though the deal was not consummated until December 22, 1937; and later, on December 28, the lot was conveyed to appellant Finance Company. By notice dated October 19, 1937, Mrs. Littleton advised appellee of above sale, claiming an ipso facto cancellation of lease relative to her 20 x 90 ft., and demanding possession at expiration of 60 days. After appellant acquired title, it advised appellee in several letters that his lease had terminated by reason of the sale, demanding possession after 60 days, and giving express notice that the property had been resold for $9,000, contingent on possession; advising said lessee of a $5,000 liability (loss of profits) in event of his failure to vacate as the lease required. Appellee refused to yield possession on the ground that he was not obliged to do so unless the whole 60 x 130 ft. lot was sold, and regularly made tender of the $11.50 rental accruing on the Littleton lot, which was refused. In the fall of 1938, Homan Starke, through efforts of appellee, sold his part of the footage to Wright Titus Company, to whom Frankfurt conveyed the former Littleton lot for $5,000. The title to these lots thus merged in one owner, who demanded possession under the original lease terms, which was promptly yielded by lessee Treadaway. However, appellant reserved from the sale its aforesaid cause of action for damages, and had already received, by assignment from Mrs. Littleton, whatever claim she might have against appellee for his earlier failure to surrender possession.

We have not been furnished with reply brief by appellee, in whose favor the trial court rendered judgment, obviously on the ground that the contract contemplated a continued occupancy by payment of rentals for the stipulated term, except for the contingency of sale by lessors of the entire footage under lease. Appellant quite logically argues that the writing provides for its termination in case either lot be sold, stressing in particular the clause that "Lessor has the privilege of cancelling lease on said property in event of sale or of placing permanent improvements on same by giving J A Treadaway 60 day written notice of same." It is the position of appellant that, from the quoted language, the lessors are severally given the option to cancel upon sale; and that exercise of said option was nowhere limited to a sale of both lots. Our attention is directed to the well-settled rule that parties to a lease may lawfully stipulate for a termination of the leasehold upon sale by the owner; Johnson v. Phelps, Tex. Com.App., 215 S.W. 446; and it has further been held that such a proviso becomes a covenant running with the land, thus a right inuring to the purchaser. Cincinnati-Louisville Theater Co. v. Masonic W. & O. Home, etc., 6 Cir., 272 F. 637.

However, we think the trial court correctly held the instrument in question to be entire rather than divisible in nature, rendering aforesaid option to terminate exercisable only upon sale of the whole 60 x 130 ft. under lease. "Primarily the question of whether a contract is entire or severable is one of intention, to be determined from the language which the parties have used and the subject matter of the agreement"; 17 C.J.S., Contracts, § 332, p. 788; including all attending circumstances when the meaning is doubtful; 10 Tex.Jur., Contracts, Sec. 185, p. 324. "* * * Likewise, if there is a single assent to a whole transaction involving several things or kinds of property, a contract is entire; but if there is a separate assent to each of the several things involved it is divisible. Furthermore, the entirety or severability of a contract may be considered to depend on whether the whole quantity, service, or thing is the essence of the contract; or whether two or more promises are so interdependent that the parties would not have entered into one without the other; * * *." 17 C.J.S. Contracts, § 331; 14 Words and Phrases, Permanent Ed., p. 696; Markham Irr. Co. v. Brown, Tex.Com.App., 292 S.W. 863–867. If it appears that the contract was to take the whole or none, then the transaction would be entire. Williston, Contracts, 1652, Sec. 863; 12 Am. Jur., Contracts, Sec. 316, p. 871; 13 C.J., p. 563, Secs. 527, 528; 17 C.J.S., Contracts, § 334; Broxton v. Nelson, 103 Ga. 327, 30 S.E. 38, 68 Am.St.Rep. 97. "The presumption is that all stipulations in a contract are dependent, and a promise will be so regarded in case of doubt". 10 Tex.Jur., supra, Sec. 187.

We conclude that the foregoing rules and principles are fairly applicable to the contract here made between the parties, because (1) a single transaction is shown, the interests of both lessors being treated as one piece of property and described as such; (2) a single consideration is expressed, payable monthly to the principal owner, of course for the account of both; (3) all parties appear to have dealt with the lease as a joint transaction up to time of the Littleton sale. The instant facts are comparable to those reflected in Ohio Oil Co. v. Fowler, Inc., 74 Ind.App. 1, 128 N.E. 626, 628, where an oil lease was involved; the court holding against cancellation, citing Thornton on Oil and Gas, 3d Ed., Sec. 91, in the statement: "An oil lease, whereby several lessors of tracts owned separately by them for a gross price, without stating the amount paid to each lessor of the land belonging to him, creates a joint obligation on the part of all the lessors." And Ewing v. Miles, 12 Tex.Civ.App. 19, 33 S.W. 235, 238, writ refused, is quite in point, though the ownership of Miles and another was joint; because this record indicates no actual knowledge by appellee, at the time the lease was made, of what part of the premises was owned by either Starke or Mrs. Littleton. In the last-cited case, cancellation was denied under similar lease recitals, the court holding: "The first ground of objection may be disposed of solely by the terms of the lease contract. That instrument provides that the lessee may renew the lease at the end of the time fixed unless the 'lessors' shall sell 'said premises,' and, in case of sale, shall surrender possession of said premises to the purchaser at the end of the contract year, etc. The plain significance of this covenant is that, in order to defeat the right of the lessee to renew the term, there must be a

sale of the entire premises by the lessors, and not a sale of a part, or a sale of the interest of one of the lessors. The sale by Frost of his interest was not such a sale as would terminate the lease."

Appellant points out that the lease, being drawn by appellee, should be construed strictly against him in event same is susceptible to more than one interpretation. But here, we are met with the rule, equally applicable, that "The authority to forfeit a vested right or estate * * * should be found only in language which is plain and clear, whose unequivocal character may render its exercise fair and rightful." Decker v. Kirlicks, 110 Tex. 90, 216 S.W. 385, 386; Ryan v. Kent, Tex. Com.App., 36 S.W.2d 1007. The trial court's judgment is in all respects affirmed.

Affirmed.