Donald BUDGE, Plaintiff,

v.

Troy V. POST, Defendant.

Civ. A. No. CA–3–79–0630–D.

United States District Court,
N. D. Texas,
Dallas Division.

June 28, 1982.

Donald C. McCleary, Dallas, Tex., for plaintiff.

Ross Teter, Dan Guthrie, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

ROBERT M. HILL, District Judge.

Came on for consideration Defendant's Motion for Relief from Judgment and Motion for Stay of Proceedings to Enforce Judgment. This Court entered Judgment against Defendant Troy V. Post ("Post") in the sum of $455,041 on January 17, 1980, following a jury trial in which the jury found that Post had breached his contract with Budge. This Court held a hearing to consider Post's Motions. Based on its examination of the parties' pleadings and briefs, together with applicable case law, the Court is of the opinion that Post is entitled to relief from this Court's prior Judgment pursuant to Fed.R.Civ.P. 60(b)(5). Post's Motion for Stay is now moot, and is therefore denied. The Judgment will be amended to reflect the Court's holding with respect to the Motion for Relief.

### I. *Facts*

Plaintiff Donald Budge ("Budge") is a world famous tennis player, having distinguished himself as a Davis Cup champion and by his triumphant performance at Wimbledon. Post is a present and former owner of various resorts and hotels located throughout the world. Budge entered into

an employment contract in which he was to serve as the tennis professional at Cambridge Towers Tennis & Racquet Club in Las Vegas, Nevada ("Cambridge Towers contract"). Budge began his post at Cambridge Towers in October 1978. In February 1979, Post informed Budge that he was being terminated because Budge did not promote interest in the tennis clinics or hold the requisite number of clinics pursuant to the Cambridge Towers contract. When Post discontinued payments, Budge sued Post in this Court for breach of contract (the "1979 lawsuit"). Following a three-day trial, the jury found that Budge had not materially breached the employment agreement with Post, and was entitled to $350,000 as compensation for the unpaid wages remaining under the Cambridge Towers contract and $85,500 for the value of housing and meals as provided in the contract. The Court entered Judgment on January 17, 1980, for a total of $455,041, which represents these two sums together with attorneys fees in the amount of $17,241, less the $1,500 sum which the jury found Budge could earn in similar employment during the remaining months under the contract.

This judgment was affirmed on appeal. *Budge v. Post*, 643 F.2d 372 (5th Cir. 1981). Pursuant to its limited power of review, *id.* at 374, the Fifth Circuit found that there was some evidence to support the jury's verdict, there was no merit to Post's claim that the jury selection process was discriminatory, and the district court's award of interest "at the legal rate" was proper. The Court of Appeals did find, however, that the jury failed to compute the present value of the award as instructed by the trial court. The case was remanded to this Court for a determination of the appropriate discount rate and recomputation of the award. *Id.* at 376.

Post's Motion for Relief does not attempt to challenge the jury's finding with respect to the parties' performance of their contractual duties at Cambridge Towers from October 1978 to February 1979. Rather, Post seeks to attack the entire basis on which the Cambridge Towers contract was reached. The Cambridge Towers contract was executed in April 1978 as a partial settlement ("the 1978 Settlement") of a prior lawsuit between Budge and Post. Under the terms of the 1978 Settlement,[1] Budge assigned to Post any claims for money which Budge had under a 1969 employment agreement which similarly had spawned a federal lawsuit in this Court in 1976 (the "1976 lawsuit"). The 1976 lawsuit concerned a ten year employment contract by which Budge was to perform similar functions from 1970 to 1980 at Post's Club Tres Vidas en la Playa in Acapulco, Mexico ("Tres Vidas contract"). Budge filed suit in 1976 contending that Post breached the Tres Vidas contract beginning in 1974 by failing to pay Budge his minimum guaranteed income and other amounts due under the contract. In 1975, prior to the filing of the 1976 lawsuit,

---

1. The 1978 Settlement provides in relevant part:

 For and in consideration of the execution of the employment agreement which is attached hereto as Exhibit "A" and made a part hereof for all purposes, Donald Budge does hereby forever release and discharge Troy V. Post, from all claims or causes of action which were asserted, which could have been asserted, or which might hereafter be asserted, arising out of the transactions and requests for relief sought in the following cause of action:

 *Donald Budge v. Troy V. Post*, Civil Action No. CA–3–[76]–1582–D, in the United States District Court for the Northern District of Texas, Dallas Division.

 For and in consideration of said release ... Troy V. Post does hereby forever release and discharge Donald Budge from all claims or causes of action which were asserted, arising out of the transactions and requests for relief sought in ... Civil Action No. CA–3–[76]–1582–D....

 The Cambridge Towers contract, incorporated by reference as Exhibit "A", provides in relevant part:

 Employee hereby assigns to Employer any claims which Employee has or which he might have for monies due and owing to Employee under the December 1969 agreement* which is the basis of the litigation presently pending before the United States District Court for the Northern District of Texas....

 *The 1969 agreement is the Tres Vidas contract, *see* discussion *infra.*

Tres Vidas went into bankruptcy in Mexico. Shortly before the 1976 lawsuit went to trial, Budge and Post executed the 1978 Settlement, which incorporated the Cambridge Towers contract, settled all claims regarding the Tres Vidas contract, and assigned to Post any monies Budge was due to receive from the Tres Vidas trustee in bankruptcy. Unbeknownst to Post or this Court in the 1979 lawsuit, Budge, acting through an attorney in Mexico, entered into a voluntary settlement agreement in July 1979 ("the Bankruptcy Settlement") with the Mexican trustee in bankruptcy for Tres Vidas, settling all of Budge's claims with respect to the Tres Vidas contract. According to the Affidavit of the agent allegedly authorized by Post, Bruce C. Leadbetter ("Leadbetter"), this fact was discovered in the Spring of 1980 when Leadbetter was informed by the Mexican trustee in bankruptcy that Budge had executed the Bankruptcy Settlement. Leadbetter stated in his Affidavit that Budge received a check on or about July 17, 1979, from the trustee in bankruptcy for Tres Vidas [2] and that the Mexican court handling the Tres Vidas bankruptcy proceedings had approved the Bankruptcy Settlement. On December 12, 1979, a jury verdict in the 1979 lawsuit was returned and the Court entered Judgment against Post on January 17, 1980. The Fifth Circuit's opinion was handed down on April 24, 1981.

Pursuant to Fed.R.Civ.P. 60(b), Post asserts that the Bankruptcy Settlement violates the terms of the 1978 Settlement and Post's recent discovery of the Bankruptcy Settlement entitles him to have the January 17, 1980, Judgment vacated. Post also posits that the Bankruptcy Settlement constitutes an accord and satisfaction of the Tres Vidas contract, which became the basis for the 1978 Settlement. According to Post, the accord and satisfaction supercede the 1978 Settlement, and preclude Budge's cause of action and the 1979 lawsuit.

## II. A Tangled Net of Procedural Faults

Before this Court may even attempt to examine the effect of the Bankruptcy Settlement upon the Judgment, the Court must determine if Post is entitled to relief pursuant to Rule 60(b).[3] Post seeks relief from the Judgment pursuant to his Motion under Rule 60(b)(5) or 60(b)(6).

**2.** There is some dispute as to the amount of funds Budge received. Leadbetter's Affidavit indicates that Budge received a check in the amount of 595,944.70 pesos. Defendant's Exhibit 4, admitted into evidence at the hearing on the Motion, states the exchange rate, which when computed equals $26,080.73. Budge contends he accepted a check for $19,600. *See* August 20, 1981, Budge Deposition at 36–37. This discrepancy is apparently due in part to a fee retained by the attorney in Mexico who sent Budge the check. As a finding of fact, the Court holds that Budge received $26,080.73.

It should be further noted that Budge maintains the check he received represents funds Tres Vidas owed Budge—not for unpaid salary—but for tennis lessons he had given. *Id.* It is clear, and Budge in fact conceded, *id.* at 59, 63, that the tennis lesson money was nonetheless a part of the Tres Vidas contract.

**3.** Rule 60(b) provides:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of the court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Post also moved at the hearing that his Motion be considered, in the alternative, as an independent action under Rule 60(b).[4] The difficulty in determining which provision, if any, is appropriate pursuant to Rule 60(b) arises from Post's delay in filing his Motions. The Leadbetter Affidavit indicates that Post learned of the Bankruptcy Settlement in October 1980, at the very earliest. Judgment was entered on January 17, 1980, and Post did not file the Motions in question until April 24, 1981. The Rule itself provides that subsections (1), (2), and (3) may not be utilized if more than one year has elapsed from entry of the judgment. It is also clear that the January 17, 1980, Judgment is not void under subsection (4). A judgment is not void if it is erroneous, *William Skillings & Assoc. v. Cunard Transp., Ltd.,* 594 F.2d 1078, 1081 (5th Cir. 1979), or if it is defective due to an error in law. *Gulf Coast Bldg. & Supply Co. v. International Brotherhood of Electrical Workers, Local 480,* 460 F.2d 105, 108 (5th Cir. 1972).

■ With respect to the residual clause in subsection (6), it is well settled that the grounds specified under the first five subsections will not justify relief under subsection (6). *Klapprott v. United States,* 335 U.S. 601, 614, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949); *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 401 n.3 (5th Cir. 1981); *William*

*Skillings,* 594 F.2d at 1081; *Gulf Coast,* 460 F.2d at 108. Furthermore, relief under subsection (6) is not available to a movant where the relief sought would have been available under another subsection *but for the time limits* of the other subsection. *Kerwit Medical Products, Inc. v. N. & H. Instruments, Inc.,* 616 F.2d 833, 836–37 n.8 (5th Cir. 1980). Budge relies on this holding, and maintains that but for the time limitations imposed by the one year requirement, subsection (2) would have provided a basis on which Post could seek relief from the Judgment because the Bankruptcy Settlement was "newly discovered" under provision (2). The Court concurs with Budge that had Post's present charge been brought by January 17, 1981, Post would have been entitled to relief pursuant to Rule 60(b)(2). The fact that Post took an appeal of this Court's Judgment does not toll the one year requirement of Rule 60(b). *Gulf Coast,* 460 F.2d at 108. Accordingly, Post is not entitled to relief pursuant to Rule 60(b)(6).

■ Nor may Post obtain relief pursuant to the Rule 60(b) "fraud upon the court" provision. While the suggestion that Budge's concealment of the Bankruptcy Settlement from the Court in the 1979 lawsuit constitutes a fraud upon the Court is not so ludicrous as to justify the cavalier remarks of Budge's counsel,[5] the Fifth Cir-

---

**4.** The Fifth Circuit clarified the two distinct procedures for obtaining relief under Rule 60(b) in *Bankers Mortgage Co. v. United States,* 423 F.2d 73, 77–79 (5th Cir.), *cert. denied,* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970). The first is a *motion* for relief, which must be filed in the district court and in the action in which the original judgment was entered. The motion is considered ancillary to or a continuation of the original suit and is based on a court's supervisory power. The second procedure is an *independent action* which is founded upon an independent and substantive equitable jurisdiction. The essential elements of an independent action are:

(1) a judgment which ought not, in equity and good conscience, to be enforced;
(2) a good defense to the alleged cause of action on which the judgment is founded;
(3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense;

(4) the absence of fault or negligence on the part of defendant; and
(5) the absence of any adequate remedy at law.

*Id.* at 79. Where an adverse party is not prejudiced an independent action for relief may be treated as a 60(b) motion, and, conversely, a 60(b) motion may be treated as the institution of an independent action. *Id.* at 77 n.7. It should further be noted that an independent action is not limited by the time requirements or the grounds of relief which are specified in Rule 60(b) with respect to motions for relief from final judgment. *Id.* at 78.

**5.** While the basis of this action has assumedly concerned a dispute in the wide world of tennis, the Court thinks that perhaps the proper characterization more closely resembles a satire in the theatrical arena. The reader is referred to Budge's September 2, 1981, Brief for Denial of Defendant's Motion for Relief from Judgment, at 9–10:

cuit has recently stated that "only a small number of those acts that can be considered fraud amount to 'fraud upon the court,' as that phrase is used in Rule 60(b)." *Kerwit*, 616 F.2d 833, 836–37. The *Kerwit* court acknowledged that the

> "concept should 'embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.'"

*Id.* at 837, citing *Kupferman v. Consolidated Research and Manufacturing Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972) (quoting 7 Moore, Federal Practice ¶ 60.33 at 515 (1971 ed.)). *See Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978), wherein the court held that a Rule 60(b) movant must establish an "unconscionable plan or scheme which is designed to improperly influence the court in its decision," citing *England v. Doyle*, 281 F.2d 304, 309 (9th Cir. 1960); *see also United States v. International Tel. & Tel. Corp.*, 349 F.Supp. 22 (D.Conn.1972), *aff'd without opinion sub. nom Nader v. United States*, 410 U.S. 919, 93 S.Ct. 1363, 35 L.Ed.2d 582 (1973), in which Judge Blumenfeld remarked:

> Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court. Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the

matter before it, will not ordinarily rise to the level of fraud on the court.

349 F.Supp. at 29 (citations omitted).

In *Kerwit*, a party which had entered into a consent decree acknowledging its infringement of a patent attempted to attack the consent judgment with newly discovered evidence that the patentee had known, prior to the issuance of its patent, that a product similar to its own had been in public use for several years. The infringer claimed that the concealment of this knowledge, which was effectuated by the entry of the consent decree prior to the patentee's obligation to respond to interrogatories, amounted to a fraud upon the court. The Fifth Circuit rejected the infringer's 60(b) motion and held that the patentee was neither obligated to suggest to the infringer nor to

> advise the district court that there were facts with which [the infringer] perhaps could have fashioned a defense to the cause of action .... the mere nondisclosure to an adverse party and to the court of facts pertinent to a controversy before the court does not add up to 'fraud upon the court' for purposes of vacating a judgment under Rule 60(b) ....

616 F.2d at 837. While the *Kerwit* court left open the question of whether a fraud upon the court would have existed had the discovery process continued and had the patentee *culpably* withheld material facts, *id.*, this Court is of the opinion that the acts of Budge more closely approximate a failure to affirmatively and independently advise opposing counsel and this Court of facts relevant to the 1979 lawsuit, which

---

..., Post's attempts to collect funds owed to Budge from Tres Vidas in the face of an outstanding judgment in Budge's favor amounting to over $350,000 is an incredible example of his contempt for our judicial system.... Mr. Post has haughtily toyed with Mr. Budge's life for over five years; he has ignored contractual commitments; he has thumbed his nose at this Court; he has maneuvered his assets to avoid liabilities to creditors; he has gambled with a decision from the Court of Appeals for the Fifth Circuit before attempting to assert his claims of "newly discovered evidence"; and to top it

all off he went to Mexico to put in his allegedly empty pockets money owed to Budge from Tres Vidas. This man with "empty" pockets, however, finds time to dine at the Dallas Country Club, to attend Braniff Board Meetings and to be referred to in area magazines as a prominent Dallas citizen. This man with "empty" pockets finds time to stomp upon other human beings and laugh under his breath at the Internal Revenue Service. Hopefully, this man's final act of disdain for our judicial system will not be tolerated.

If the sneaker fits, Mr. Budge, ....

are actions not within the scope of the fraud on the court clause in Rule 60(b).

 Post also urges that Rule 60(b)(5) is applicable to the facts at bar. The last clause of subsection (5) permits relief where "it is no longer equitable that the judgment should have prospective application." The Fifth Circuit has held that Rule 60(b)(5) applies only to judgments that have a prospective effect, rather than those that provide a present remedy for a past wrong. *Cook v. Birmingham News*, 618 F.2d 1149, 1152 (5th Cir. 1980). It appears that this clause has been construed as one which encompasses injunctive type relief, rather than actions at law for money damages. *Marshall v. Board of Education*, 575 F.2d 417, 425 (3d Cir. 1978); *Ryan v. United States Lines Co.*, 303 F.2d 430, 434 (2d Cir. 1962). The court in *Cook* noted that a back pay award is to be characterized as a 'present' rather than a 'prospective' remedy. 618 F.2d at 1153 n.3. The Fifth Circuit has acknowledged, however, that Rule 60(b)(5) may have applications of a non-injunctive nature. *Equitable Life Assurance Soc'y. v. MacGill*, 551 F.2d 978, 985 (5th Cir. 1977); *Bros. Inc. v. W. E. Grace Mfg. Co.*, 320 F.2d 594, 610 (5th Cir. 1963). In *MacGill*, the district court had entered a final judgment in favor of the insured with the proviso that attorney's fees would be subsequently determined. The insurer took an appeal from the judgment, including the "award" of attorney's fees. The court of appeals held that the trial court had never addressed this issue. Following the circuit court's affirmance, the trial court held a hearing on the attorney's fees issue. The court awarded the insured attorney's fees of one dollar, and treated the insurer's objections to any attorney's fees as a Rule 60(b) motion. Rejecting the insured's argument that the insurer was bound by a pre-trial stipulation on attorney's fees despite the state court's subsequent clarification of the law, the Fifth Circuit deleted the original judgment's proviso regarding the subsequent assessment of attorney's fees. Specifically refusing to anchor its decision on subsection (5) or (6) of Rule 60(b) in light of the fact that the insurer's motion was timely and based on a reason justifying relief, 551 F.2d at 985, the court held:

> While clause (b)(5) has been applied most frequently in final judgments involving injunctions, 'in any other situation when the judgment has prospective application relief may be given from its prospective features when subsequent events make it no longer equitable that the judgment have prospective application.' [7 Moore's Federal Practice] ¶ 60.26(4), at 337. *See also Bros. Inc. v. W. E. Grace, Mfg. Co.*, [sic] 320 F.2d 594 (5th Cir. 1963), and cases cited in Annotation, 14 A.L.R.Fed. 309, 328–29, 'which have a prospective application which becomes inequitable because of changed circumstances.' While none of the cases cited in the Annotation or in Moore are precisely in point, we think the judgment here does have a prospective application with respect to the attorney [sic] fees to be determined and assessed later.

*Id.* While the court in *MacGill* was concerned with the *assessment* of fees, instead of an actual amount, it is arguable that the modification of the judgment in *MacGill* more closely approximates relief in the form of money damages rather than a form of relief typically associated with actions in equity. This proposition is buttressed somewhat by the *MacGill* court's citation of the *Grace* case, 320 F.2d 594.

*Grace* concerned the new discovery of a prior publication of a patented device and the effect of the new evidence on the patent's validity. On this basis, the circuit court ordered the trial court to conduct a hearing and although the court of appeals relied on Rule 60(b)(6), it noted that the main appeal concerned the question of *damages*:

> While this award of damages sounds in the past, rather than the future, no judgment has yet been paid, and in practical effect we are dealing with the prospective application of the judgment, not the unscrambling of the past. Relief may be available for this. Cf. F.R.Civ.P. 60(b)(5).

320 F.2d at 610. *See* Annot., 14 A.L.R.Fed. 309, 329 (1973). While *MacGill* and *Grace*

provide some support for relief from a judgment of money damages, the Court is of the opinion that the January 17, 1980, Judgment more closely approximates the back pay award in *Cook*, which was a present remedy not within the scope of Rule 60(b)(5)'s final clause. Even if Post's Motion could be sustained on the basis of this clause, relief from any amounts already paid pursuant to the judgment would require application of a different provision of Rule 60(b). 7 J. Moore Federal Practice ¶ 60.26(4), at 333 (2d 1979).

The Court is thus left with the possibility that Post is entitled to relief pursuant to the first clause of Rule 60(b)(5) or an independent action. The Fifth Circuit's decision in *Johnson Waste Materials v. Marshall*, 611 F.2d 593 (5th Cir. 1980), is relevant with respect to both of these considerations. The question presented in *Johnson* was whether judgment debtors could prevail in an independent action pursuant to Rule 60(b) to reform a judgment based on evidence that they had previously paid a portion of the obligation underlying the judgment, despite the debtors' lack of due diligence in producing the evidence at the time of trial. The debtors challenged an earlier judgment which enjoined them from withholding compensation from their employees under the Fair Labor Standards Act of 1938. In computing the amount of compensation due, the trial court had to resort to testimony of employees and the defendants' answers to interrogatories because no record of hours and wages had been presented for the court's consideration. Thirteen months after entry of the judgment (and its affirmance by the court of appeals), the judgment debtors filed an independent action under Rule 60(b) in light of bank statements and cancelled checks which turned up in the course of an IRS audit and which indicated both the number of employee hours and the amount of wages. Based on this evidence, the judgment debtors contended that the judgment erroneously imposed an obligation which was more than twice the debt actually owed. On appeal, the Fifth Circuit held that a motion under Rule 60(b)(2) or an independent action

based on newly discovered evidence was unavailable because the evidence therein was not newly discovered but was instead newly produced, and the debtors had not acted with due diligence at the trial. *Id.* at 598–99. An independent action based on the considerations underlying Rule 60(b)(5), however, was sanctioned. The court noted that an independent action to relieve a party from a judgment is not restricted to a set time limit and is in fact broader than a motion under Rule 60(b)(5). *Id.* at 600. The court also distinguished a mere reduction in the judgment by the amount the debtors had paid, thereby denying the employees a windfall recovery, *id.*, from the granting of a new trial under Rule 60(b)(2), through which the "judgment beneficiary will almost certainly be deprived of the judgment in his favor." *Id.* at 599. The *Johnson* court further noted that the absence of a specified time limitation precluded the possibility that the plaintiff would be prejudiced by an independent action. *Id.* at 601. The court thus held that in the "exceptional circumstance where the evidence of payment is virtually conclusive, mere negligence on the part of the judgment debtor does not preclude reformation of the judgment in a Rule 60(b) independent action." *Id.* at 595.

In so ruling, the *Johnson* court adopted the holding in *Ferrell v. Trailmobile, Inc.*, 223 F.2d 697 (5th Cir. 1955), which was ostensibly decided as a Rule 60(b)(5) motion, and applied *Ferrell's* rationale in independent actions. In *Ferrell*, the defendant succeeded in obtaining, after judgment was entered against him, copies of money orders demonstrating that he had in fact made the payment that the court previously held he did not make. The Fifth Circuit held that in order to "prevent a manifest miscarriage of justice," a new trial may be required despite the absence of due diligence where practically conclusive evidence of payment is demonstrated. *Id.* at 698. It is also apparent that the holding in *Johnson* served to create an exception to the elements necessary to maintain an independent action for the *Johnson* court clearly suggested the

debtors were negligent, 611 F.2d at 598, the absence of which is a prerequisite to an independent action. *See* note 4 *supra.*

▮▮▮▮ It is the opinion of this Court that both the factual situation and the holding in *Johnson* are applicable to the case at bar. It also appears that the *Johnson* holding could have been based on a motion pursuant to Rule 60(b)(5). It is not clear to this Court why the *Johnson* court struggled to link Rule 60(b)(5) with an independent action under Rule 60(b), for the Rule does not limit or specify the grounds on which relief may be predicated. *See Bankers Mortgage*, 423 F.2d 73, 78. Perhaps the *Johnson* court believed that some connection was necessary between the two procedures since they are both contained within the same rule. Whatever its rationale, the *Johnson* case indicates that Post is entitled to relief from the Judgment for there is virtually conclusive evidence of payment. While Post himself did not tender money to Budge in Mexico, Budge assigned his claims in the Tres Vidas matter to Post in the 1978 Settlement, *see* note 1 *supra* ; the legal effect of this assignment is that Post's money, which arose from his interests in the Tres Vidas bankruptcy proceedings, was used to pay Budge. Thus, the fact that the debtors in *Johnson* and *Ferrell* personally paid part of their debts does not sufficiently distinguish or make inapplicable their holdings. The Court is also convinced that Post's motion or independent action, brought within fifteen months of Judgment, are within a reasonable time; *see Johnson*, where the filing of the motion thirteen months after Judgment was held to be reasonable. 611 F.2d at 601.

In holding that Post is entitled to relief from Judgment pursuant to Rule 60(b), the Court is aware of "the delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of all the facts.' " *Seven Elves*, 635 F.2d 396, 401, citing *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir.), *cert. denied*, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970). The Fifth Circuit in *Seven Elves* reiterated the factors that a district court should consider in striking this balance:

(1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether—if the judgment was a default or a dismissal in which there was no consideration of the merits—the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether—if the judgment was rendered after a trial on the merits—the movant has a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack. These factors are to be considered in the light of the great desirability of preserving the principle of the finality of judgments.

635 F.2d at 402. As stated previously, Post's Motion was made within a reasonable time, and it is not being used as a substitute for appeal. While Judgment herein was rendered after a trial on the merits, in contrast to the default proceeding in *Seven Elves*, neither Post nor the Court knew of the Bankruptcy Settlement, which fact, if known, would have affected the amount of the verdict. *See* Section III *infra.* Other equities likewise support this Court's holding that Post is entitled to relief. There are no intervening rights that would be prejudiced by granting Post relief, and the amount of the Judgment is relatively large. *Id.* at 403. The Court thus concludes that finality must yield to the "equities of [this] particular case in order that the judgment might reflect the true merits of the cause." *Id.* at 401; *Johnson*, 611 F.2d at 600; *Rozier*, 573 F.2d at 1346; *Ferrell*, 223 F.2d at 698.

From this dizzying volley of applicable procedural devices, the Court concludes that Post's entitlement to relief is most appropriately premised on a Rule 60(b)(5) motion. First, a motion eliminates the strict requirements for an independent action which were imposed in *Bankers Mortgage, see* note 4 *supra,* and relaxed by the *Johnson* court. Second, an independent action, unlike a motion, cannot be made a basis for relitigation of issues adjudicated by the judgment sought to be modified. *Addington v. Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 668 (5th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981). Third, the policies and goal of achieving substantial justice have been effectuated by the courts primarily in the context of Rule 60(b) motions. Having held that Post is entitled to relief pursuant to Rule 60(b)(5), the Court next examines the relief to which he is entitled.

### III. *Final Match*

#### 1. *Budge's ad*

Post maintains that Budge's receipt of the funds from the Mexican trustee in bankruptcy for Tres Vidas constitutes an accord and satisfaction of the 1978 Settlement and hence the January 17, 1980, Judgment based thereon. An accord and satisfaction is an affirmative defense consisting of a new contract, express or implied, in which the parties agree to the discharge of the existing obligation by means of the lesser payment tendered and accepted. *Industrial Life Insurance Co. v. Finley,* 382 S.W.2d 100, 104 (Tex.1964); *Jenkins v. Henry C. Beck Co.,* 449 S.W.2d 454, 455 (Tex. 1970). In *Jenkins,* the Texas Supreme Court reiterated the elements necessary to establish an accord and satisfaction:

> The evidence must establish an assent of the parties to an agreement that the amount paid by the debtor to the creditor was in full satisfaction of the entire claim. The minds must meet and where resting in implication the facts proved must irresistably point to such conclusion. There must be an unmistakable communication to the creditor that tender of the

lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation. It has been said that the conditions must be made plain, definite and certain; that the statement accompanying the tender of a sum less than the contract price must be so clear, full and explicit that it is not susceptible of any other interpretation; that the offer must be accompanied with acts and declarations which the creditor is 'bound to understand.'

*Id.* (citations omitted). *Texas Gulf Sulphur Co. v. Gladys City Co.,* 506 S.W.2d 281, 285–86 (Tex.Civ.App.—Beaumont 1974, writ ref'd, n. r. e.). In light of the fact that Post did not even learn of Budge's receipt of the funds from the Tres Vidas trustee in bankruptcy until more than one year after the fact, it is difficult to see how there can possibly be an assent of the parties or meeting of the minds. *See id.* Even if it is assumed that Post stood in the shoes of the Mexican trustee, and assent is thereby imputed to Post, Post has failed to demonstrate that there existed a clear understanding of exactly what was being satisfied and how the Tres Vidas contract affected the Cambridge Towers contract and the 1978 Settlement. *See id.* Budge's receipt of the Tres Vidas funds does not constitute an accord and satisfaction.

Nor does the 1978 Settlement constitute a divisible contract with independent covenants. The question of whether a contract is entire or severable primarily depends on the intent of the parties, as expressed in the language of the contract, as well as its subject matter. *Frankfurt Finance Co. v. Treadaway.* 159 S.W.2d 514, 516 (Tex.Civ.App.—Dallas 1942, writ ref'd, w. o. m.); *McFarland v. Haby,* 589 S.W.2d 521, 524 (Tex.Civ.App.—Austin, 1979, writ ref'd, n. r. e.). Quoting from 17 C.J.S. *Contracts* § 331, the *Treadaway* court held that:

> . . . if there is a single assent to a whole transaction involving several things or kinds of property, a contract is entire; but if there is a separate assent to each of the several things involved it is divisible.

Furthermore, the entirety or severability of a contract may be considered to depend on whether the whole quantity, service, or thing is the essence of the contract; or whether two or more promises are so interdependent that the parties would not have entered into one without the other.

*Treadaway*, 159 S.W.2d at 516. In the present case, there was only one assent to the 1978 Settlement, which incorporated the Cambridge Towers contract, and the consideration supporting the 1978 Settlement was neither expressly nor impliedly apportioned with respect to each promise made by the parties. 17A C.J.S. *Contracts* § 334 (1963); *Treadaway*, 159 S.W.2d at 516; *Sisk v. Parker*, 469 S.W.2d 727, 732–33 (Tex.Civ.App.— Amarillo 1971, writ ref'd, n. r. e.); *Johnson v. Karam*, 466 S.W.2d 806, 810 (Tex.Civ. App.—El Paso, 1971, writ ref'd, n. r. e.). It is also apparent that the parties considered their promises to be so intertwined that Budge would not have released his 1976 lawsuit without the promise of a new employment agreement nor would Post have agreed to a new employment contract without the release and assignment.

 Moreover, the "enforceability" or severability clause in the 1978 Settlement[6] does not affect the holding that the parties did not *intend* to create a divisible or severable contract. A severability clause does not automatically create a severable or divisible contract, *see Patrizi v. McAninch*, 153 Tex. 389, 269 S.W.2d 343, 347–48 (1954); the contractual provisions themselves, as well as the underlying circumstances and intent of the parties, must nonetheless be examined. *Id.* This is true even where the clause clearly and unambiguously specifies its application. *Id.* A fair reading of the enforceability clause herein indicates that the clause seeks to avoid the rule whereby illegality of one portion of a contract renders the contract unenforceable in its entirety, *see id.* at 348–49. It cannot reasonably be maintained that the clause was

intended to apply to an event such as Post's breach of the employment agreement. Thus, the enforceability clause was not meant to and does not have the effect of making an otherwise dependent contract into one whose provisions are independent and divisible.

 Budge maintains that even if Post hurdles the Rule 60(b) procedural net, the ball is nonetheless in his court, based on the proposition that Post's initial breach of the 1978 Settlement relieved Budge of any duties under that contract. In support of this argument, Budge cites the Texas Supreme Court's recent decision in *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685 (Tex. 1981). *Mead* concerned a contract by which the plaintiff agreed to sell her business and to work for the defendant in exchange for various sums of money and assumptions of plaintiff's outstanding debts. After commencing her employment with the defendant, the defendant breached the contract by its failure to pay the plaintiff certain commissions to which she was entitled. The plaintiff thereupon terminated her employment and began to compete with the defendant in violation of an anti-competition clause in the contract. The plaintiff sued the defendant for its failure to pay and defendant counterclaimed based on the plaintiff's acts of competition. The jury awarded a verdict in favor of plaintiff and against defendant on all issues. On appeal, the defendant urged *inter alia* that it was error to award the plaintiff her commissions on account of her breach. The Supreme Court rejected this argument, holding that a party in default on a contract is not relieved by a subsequent breach by the other party because default by one party excuses performance by the other party. *Id.* at 689. This is because reciprocal promises in a contract are now presumed in the absence of an intention to the contrary to be mutually dependent rather than independent, resulting in the proposition that a

---

6. Section 11 of the Cambridge Towers contract, identified as the "enforceability" clause, provides:

> If any provision of this contract is void or unenforceable, it shall in no way affect any other provision of the contract or its validity or enforceability.

breach by one party will excuse the performance of the other. *Morgan v. Singley*, 560 S.W.2d 746, 749 (Tex.Civ.App.—Texarkana 1977, no writ). The courts have narrowed this general statement where a material breach has occurred without an accompanying intention to repudiate the remainder of the contract. The injured party in this situation has an election of ceasing or continuing performance, and " 'any act indicating an intent to continue will operate as a conclusive election, *not indeed depriving him of a right of action for the breach which has already taken place*, but depriving him of any excuse for ceasing performance on his own part.' " *Mandril v. Kasishke*, 620 S.W.2d 238, 245 (Tex.Civ.App.—Amarillo 1981, writ ref'd n. r. e.), quoting *Sinclair Refining Co. v. Costin*, 116 S.W.2d 894, 898 (Tex.Civ.App.—Eastland 1938, no writ).

## 2. *Ad out*

 The Court is of the opinion that the rule of law enunciated in *Mead* and *Morgan* is "too broad for controlling application" herein. *Mandril*, 620 S.W.2d at 645. Clearly, Post committed the first breach of the Cambridge Towers contract, just as the defendant in *Mead* first breached the employment contract therein. Budge, like the plaintiff in *Mead*, committed a breach thereafter. It cannot be said, however, that Mead's breach of the non-competition clause went to the "essence" of the contract, *see Morgan*, 560 S.W.2d at 749. Budge, in contrast, breached the essence of the Cambridge Towers contract. The crux of the Cambridge Towers contract, as manifested in the underlying consideration, was the settlement of the prior Tres Vidas dispute and the accompanying assignment of these claims to Post. The Court thus believes that the more analogous principle is that endorsed in *Earl Hayes Rents Cars & Trucks v. City of Houston*, 557 S.W.2d 316 (Tex.Civ.App.—Houston 1977, writ ref'd, n. r. e.):

'Where there are several terms in a contract, a breach committed by one of the parties may be a breach of a term which the parties have not, on a reasonable construction of the contract, regarded as vital to its existence. Such a term is said to be subsidiary, and breach thereof does not discharge the other party; he is bound to continue his performance of the contract, but may bring an action to recover such damages as he has sustained by the default.

The prevailing rule is that, where a promise is to be performed in the course of the performance of the contract, and after some of the consideration of which it forms a part has been given, it will be regarded as subsidiary, and its breach will not effect a discharge unless there are words expressing the fact that it is a condition precedent, or unless the performance of the thing promised is plainly essential to the contract.'

*Id.* at 321, quoting 17A C.J.S. *Contracts* § 476, p. 673.

 In *Earl Hayes*, the parties entered into a contract whereby the City granted the plaintiff the right to operate parking facilities at the airport in exchange for a specified percentage of annual gross revenues derived thereby. The plaintiff contended that the City first breached the contract by failing to provide certain parking spaces and office space, which failure caused the plaintiff to expend its own funds. The plaintiff withheld the revenues due the City after it unsuccessfully sought reimbursement for the funds expended. The City then enacted an ordinance which facilitated the eviction of the plaintiff and the City's takeover of the parking facilities. The City counterclaimed in the plaintiff's damage suit for the difference between the guaranteed minimum payments pursuant to the contract and the revenues obtained by the City's operation of the parking facilities. Neither party submitted special issues pertaining to the breach of contract, and the trial court failed to prepare written findings explaining its sole award for the loss suffered by the plaintiff as a result of the City's takeover. The court of appeals inferred from the record that the trial court had concluded that the City's failure to provide office facilities and the requisite number of parking spaces was

not of such a nature, under the circumstances, as to excuse [the plaintiff's] obligation to pay the required compensation. Not every breach of performance will excuse the other party from performance. Where the obligations imposed upon one party are independent of or subsidiary to the obligations imposed upon the other, a breach by one party may not constitute such a repudiation of the contract as will excuse the other party from continued performance.

557 S.W.2d at 320. *See also* 17A C.J.S. *Contracts* § 473. The court of appeals further stated that the trial court correctly concluded that the plaintiff had elected "to continue the contract in effect and that the City's breach did not excuse [the plaintiff's] failure to perform." 557 S.W.2d at 321. It is not clear from the opinion in what way the plaintiff "continued the contract in effect." It is reasonable to infer that the plaintiff continued to operate the parking lot while withholding the specified minimum annual payments. If this inference is correct, *Earl Hayes* admittedly presents a stronger case than the one at bar with respect to an election to continue performance. It does not appear from the record that Budge even remained at Cambridge Towers after his termination, much less that he performed affirmative duties. The fact that Budge sued on the contract, however, suggests that Budge intended that the contractual obligations were to be given effect. Budge's acts of suing on the contract for lost wages while receiving the Tres Vidas money are inconsistent with any theory of recovery under contract law. Budge's receipt of the Tres Vidas funds is analogous to an action for rescission whereby the parties attempt to restore the status quo through restitution of the entire consideration. *See Ennis v. Interstate Distributors, Inc.*, 598 S.W.2d 903, 906–07 (Tex.Civ. App.—Dallas 1980, no writ). While it is questionable whether the equitable remedy of rescission would have been an appropriate theory of recovery in this case, *see id.*, Budge's action at law for damages resulting from lost wages is clearly incompatible with his receipt of the Tres Vidas funds. At the very least, Budge's acts fly in the face of the principle that "one cannot enforce an advantage existing only by virtue of a contract, and at the same time repudiate the contract as one not binding upon him, thereby avoiding some of its provisions." *National Aid Life v. Adams*, 157 S.W.2d 957, 958 (Tex.Civ.App.1941, writ dismissed); *see Republic Nat'l Bank v. Whitten*, 383 S.W.2d 207, 215 (Tex.Civ.App.—Dallas 1964), *aff'd*, 397 S.W.2d 415 (1965); 13 Tex. Jur.2d *Contracts* § 311.

### 3. *Match Point*

The Court is thus of the opinion that by receiving the Tres Vidas funds, Budge breached the assignment provision of the 1978 Settlement and Post is accordingly entitled to relief. Because the Court has already found that Budge's receipt of the funds does not constitute an accord and satisfaction, the Court must determine the appropriate form of relief. The Court finds that Budge's acceptance of the Tres Vidas funds is best characterized as a setoff or partial payment. Although a setoff is legally distinguishable from a payment since the former arises where the defendant could have maintained an independent suit, 52 Tex.Jur.2d *Setoff, Counterclaim, and Cross Actions* §§ 2, 6, 55, whereas payment is an affirmative defense, 44 Tex.Jur.2d *Payment* § 53, the practical effect herein is the same because both require an adjustment of debts or obligations, and the purpose of a setoff is to permit the claims of the parties to be adjudicated in one suit. 52 Tex.Jur.2d *Setoff, Counterclaim and Cross Actions*, § 7; *see Gulf Oil Corp. v. Lone Star Producing Co.*, 322 F.2d 28, 33 (5th Cir. 1963). One purpose for the distinction is that setoffs, unlike payments, are subject to statutes of limitations. 52 Tex.Jur.2d *Setoff, Counterclaim, and Cross Actions* § 25; *Gulf Oil*, 322 F.2d at 33. This defense, however, is not relevant in the present case. The general rule regarding the defense of payment is that the parties must intend it: payment does not occur unless money passes from the debtor to the creditor for the purpose of extinguishing the debt, and the

creditor must receive it for the same purpose. *Rowlett v. Superior Ins. Co.*, 325 S.W.2d 921, 923 (Tex.Civ.App.—Eastland 1959, writ ref'd, n.r.e.). For this reason, the Court believes a setoff is more appropriate here, although not specifically pled as such.[7] Moreover, Budge's counsel concedes that in the event Post is entitled to relief, the Judgment should be modified to the extent of the amount received by Budge.[8]

Assuming that Budge's acceptance of the Tres Vidas funds would give rise to an independent cause of action, the Court is of the opinion that Post's measure of damages is limited to the amount Budge actually received. This Court has no other practicable method of assessing the value of Post's interest in the bankrupt Tres Vidas resort, especially since the bankruptcy proceedings were conducted in Mexico. Accordingly, the Court finds that Post should be entitled to a credit with respect to the outstanding balance of the Judgment, and the credit should be in the same amount as the funds received by Budge under the Bankruptcy Settlement. *See, e.g., Ramo, Inc. v. English*, 500 S.W.2d 461, 468–69 (Tex.1973); *Espinoza v. Victoria Bank & Trust Co.*, 572 S.W.2d 816, 829 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd, n.r. e.); *Smith v. Noble Drilling Co.*, 272 F.Supp. 321, 322 (E.D.La.1967); *Williams v. Offshore Company*, 216 F.Supp. 98, 100 (E.D.La.1963). The Court notes that this remedy appears to be consistent with *Johnson*, 611 F.2d 593: the conclusive proof that the judgment debtors had paid a portion of the obligation underlying the judgment not only established the procedural basis for providing relief to the judgment debtors, *see* Section II *supra*, but this fact led the Fifth Circuit to conclude that the judgment should be reduced by the amount that was previously paid by the judgment debtors. *Johnson*, 611 F.2d at 600–01.

Accordingly, Post's Motion for Stay is hereby denied. His Motion for Relief from Judgment is granted to the extent that the January 17, 1980, Judgment should be reduced by $26,080.73, which is the amount Budge received in the Bankruptcy Settlement. As a parting lob, this Court expresses the very sincere hope that a tennis court will be the only court in which these parties find themselves from this point on.

## AMENDED JUDGMENT

Came on for consideration Defendant's Motion for Relief from Judgment, and this Court having filed a Memorandum Opinion and Order thereon, hereby amends the Judgment entered in this cause on January 17, 1980. The amount awarded to plaintiff Donald Budge in the sum of $445,041 having been reduced by stipulation of the parties in the amount of $58,842.44 to account for the present value of the original Judgment, and this resulting sum in the amount of $396,198.56 being subject to a reduction of $26,080.73 to reflect the defendant Troy Post's prior payment or setoff,

It is ORDERED and ADJUDGED that the plaintiff Donald Budge recover of the defendant Troy Post the sum of $370,117.83, with interest at the legal rate from January 17, 1980, and his costs of action.

---

7. It is perhaps arguable, however, that in light of all the circumstances, Budge and Post intended that Budge's receipt of the Tres Vidas funds would constitute a partial payment arising out of Post's obligations under the 1978 Settlement.

8. *See* Plaintiff's October 16, 1981 Brief in Response to Order of Court, at 11. This point was discussed in a slightly different context:

Budge's counsel proferred that if the 1978 Settlement is construed by the Court to consist of independent promises, the remedy for breach of an independent covenant is an action at law for damages. *See Emmords, Inc. v. Obermiller*, 526 S.W.2d 562, 566 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd, n.r.e.). *Cf.* 17A C.J.S. *Contracts* § 473.